Jeffrey A. Wurst
Jack Dayon (*pro hac vice* motion pending)
**ARMSTRONG TEASDALE LLP**
919 Third Avenue, 37th Floor
New York, NY  10222
Tel:    (212) 409-4400
Email: jwurst@atllp.com
        jdayon@atllp.com

Erin M. Edelman (*pro hac vice*
motion pending)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Tel:    (314) 621-5070
Email: eedelman@atllp.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| PREMIERE JEWELLERY, INC, et al.,[1] | ) ) | Case No. 20-11484 |
|  | ) ) | (Joint Administration Requested) |
| Debtors. | ) ) |  |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
EXISTING BUSINESS FORMS AND (D) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of interim and final orders (the "Proposed Interim Order"

and "Proposed Final Order," respectively): (i) authorizing, but not directing, the Debtors to

(a) continue to operate the Debtors' cash management system (the "Cash Management System");

---

[1] The Debtors in these cases are each incorporated or organized in the state of Delaware, and along with the last four digits of each Debtor's federal tax identification number are:  Premiere Jewellery, Inc. [0250];Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043] and ETYM Properties, LLC [4377]; and PJT, LLC [3105].  The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 1016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

(b) honor certain prepetition obligations related thereto; (c) continue to perform the Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense status to Intercompany Claims (as defined below) in accordance with the terms set forth herein; and (d) maintain existing business forms; and (ii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

JURISDICTION AND VENUE

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

2.       Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.       The statutory bases for the relief requested herein are sections 105, 363, 364, 503, and 507 of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

BACKGROUND

4.       Premiere Jewellery, Inc. and affiliated debtors in possession (collectively, the "Debtors") are a jewelry design, sales, and distribution enterprise, with headquarters in East Providence, Rhode Island and offices also located in New York, NY,  and Qingdao and Yiwu, China. The Debtors design and distribute costume jewelry and hair goods and partner with major retailers, who then sell the Debtors' merchandise to consumers.

5.       On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

2

6.    A comprehensive description of the Debtors' operations and events leading to the commencement of these chapter 11 cases is set forth in the *Declaration of A. Howard Moser, Chief Restructuring Officer of Premiere Jewellery, Inc. and its Affiliates in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "First Day Declaration") pursuant to Rule 1007-2 of the Local Bankruptcy Rules of the Southern District of New York, filed contemporaneously herewith and incorporated herein by reference.

## RELIEF REQUESTED

7.    By this Motion, the Debtors request authority, pursuant to sections 105(a), 363, 364, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, by way of entry of the Proposed Interim Order and Proposed Final Order, authorizing, but not directing, the Debtors to continue to operate the Cash Management System, and to honor certain prepetition obligations in accordance with the operation of the Cash Management System. Specifically, the Debtors request authority to: (i) continue to use, with the same account numbers, each of the Bank Accounts; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; and (iii) conduct banking transactions by all usual means and debit the Bank Accounts on account of all usual items and payment instructions.

8.    Additionally, the Debtors seek authority to: (i) use, in their present form, all Business Forms (including check stock, letterhead, purchase orders and invoices) and other correspondence and documents related to the Bank Accounts, without reference to the Debtors' status as debtors in possession and (ii) continue the Intercompany Transactions between and among the Debtors in the ordinary course of business and grant administrative expense status to Intercompany Claims.[2]

---

[2] Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors believe the Intercompany Transactions are ordinary course transactions

9.       In addition, the Debtors request that the Court schedule a final hearing (the "Final Hearing") within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

10.      The Proposed Interim Order and the Proposed Final Order granting the relief requested in the Motion on an interim basis is attached hereto as Exhibit B.

## THE CASH MANAGEMENT SYSTEM

11.      The Debtors (collectively, the "Company") use an integrated, centralized Cash Management System to collect, transfer and disburse funds generated by their operations. The Cash Management System facilitates cash monitoring, forecasting and reporting, and enables the Debtors to maintain control over the administration of three (3) bank accounts (together with any other bank accounts the Debtors may open in the ordinary course of their business, the "Bank Accounts") owned by the Company maintained with multiple banks (collectively, the "Banks"), including those set forth on Exhibit A.

12.      The Cash Management System is vital to the Debtors' ability to conduct business throughout the United States and in foreign markets, and is tailored to meet the Debtors' operating needs. Specifically, the integrated Cash Management System helps control funds, serves as a repository for cash receipts, manages cash disbursements, ensures cash availability for each of the Debtors, and reduces administrative expenses by facilitating the movement of funds among multiple entities by centralizing cash operations. The Cash Management System is generally similar to those commonly employed by complex businesses comparable in size and scale to the Debtors. Any disruption of the Cash Management System would have an immediate adverse effect on the Debtors' business and operations to the detriment of their estates and

---

within the meaning of Bankruptcy Code section 363(c)(l) and, therefore, do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a post-petition basis.

numerous stakeholders, as their business requires prompt access to cash and accurate cash tracking. Accordingly, to minimize disruption caused by these chapter 11 cases and to maximize the value of the Debtors' estates, the Debtors request authority to continue to utilize their existing Cash Management System during the pendency of these chapter 11 cases, subject to the terms described herein.

## I.     Description of the Cash Management System

13.     The Debtors' Cash Management System is comprised of Bank Accounts held by Debtor Tanya Creations, LLC. A schedule of the accounts described above is attached hereto as Exhibit A.

14.     Two of the Company's Bank Accounts are maintained at Centreville Bank and Bank of America, N.A., where the Debtors maintain operating accounts. Debtors also maintain a Bank Account with Webster Bank, N.A. Two of the three Bank Accounts are Approved Depositories by the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), pursuant to the U.S. Trustee's *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").

15.     The bulk of the Debtors' cash on hand is comprised of proceeds from the Debtors' ongoing business operations. As of the Petition Date, the Debtors have an aggregate amount of approximately $170,267.94 in the Bank Accounts. Generally, the Cash Management System is organized around the two operating accounts maintained at Centreville and Bank of America.

16.     The Debtors incur periodic service charges and other fees in connection with the maintenance of the Cash Management System (the "Bank Fees"). Generally, the Bank Fees for each month are paid in arrears each month and are automatically deducted from Debtors' Bank Accounts as Bank Fees for each Bank Account are assessed by the applicable Banks. Historically, the Debtors estimate that they pay approximately $1,400.00 in Bank Fees each

month.  The Debtors estimate that approximately $100.00 in Bank Fees remain outstanding as of the Petition Date.

## II.    Intercompany Transactions

17.    The Debtors maintain business relationships with each other, and thus engage in intercompany transactions (collectively, the "Intercompany Transactions") in the ordinary course of business. The Intercompany Transactions cover a number of different categories, including intercompany loans, intercompany accounts receivable and accounts payable under various intercompany agreements, the direct payment of third-party obligations by one affiliate on behalf of another affiliate (with a corresponding adjustment to the Debtors' books and records), and categories related to other amounts outstanding on account of the Debtors' Cash Management System. The Debtors' ability to continue to make and receive payments related to these business operations in the ordinary course is essential to preserving value for the estates' stakeholders.

18.    At any given time, as a result of ordinary course Intercompany Transactions, there may be claims owing by one Debtor to another Debtor (the "Intercompany Claims"). For example, by the operation of the Cash Management System, certain of the Debtors make payments to third parties on behalf of other Debtors, resulting in intercompany receivables and payables. The Debtors track all intercompany balances in their accounting system and can ascertain, trace and account for all Intercompany Claims. Each payment from a Debtor and each bookkeeping entry between Debtors on account of a post-petition Intercompany Transaction (each, a "Post-petition Intercompany Transaction") is an essential component of the Cash Management System. Discontinuing the Intercompany Transactions post-petition would unnecessarily disrupt the Cash Management System and the Debtors' operations to the detriment of the Debtors and their stakeholders. The Debtors additionally request authority to continue entering into ordinary course Intercompany Transactions between and among the Debtors.

19.     Further, to ensure that each Debtor will not fund the operations of another entity at the expense of such Debtor's creditors, the Debtors respectfully request that pursuant to Bankruptcy Code sections 503(b)(1) and 364(b), that all valid Intercompany Claims arising from post-petition payments from Debtors to other Debtors on account of Post-petition Intercompany Transactions be accorded administrative expense status. This relief will ensure that each entity receiving payments from a Debtor or having payment obligations met by a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

## III.    The Debtors' Existing Business Forms

20.     The Debtors use a variety of preprinted and electronic business forms including checks, letterhead, correspondence forms, invoices, purchase orders and other business forms in the ordinary course of business (collectively, and as they may be modified from time to time, the "Business Forms"). The Debtors also maintain books and records to document their financial results and a wide array of necessary operating activities. Rather than requiring the Debtors to incur the expense and delay of ordering entirely new business forms as required under the U.S. Trustee Guidelines, the Debtors seek authority to continue using all currently existing Business Forms (including, without limitation, printed and/or electronic checks, letterhead, correspondence forms, invoices and purchase orders) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession. This will minimize expenses to the Debtors' estates and avoid confusion and the potential for error on the part of employees, customers, vendors and suppliers during the pendency of these chapter 11 cases.

<u>**BASIS FOR RELIEF**</u>

**I.      The Court Should Approve the Debtors' Continued Use of the Cash Management System Because It Is Essential to the Debtors' Operations**

21.      The Cash Management System constitutes an ordinary course and essential business practice of the Debtors. The Cash Management System provides significant benefits to the Debtors including, among other things, the ability to control corporate funds, ensure the availability of funds when necessary, and reduce costs and administrative expenses by facilitating the movement of funds and developing timely and accurate account balance information. Thus, to ensure the Debtors' smooth transition into chapter 11 and realize the benefits of the Cash Management System, the Debtors should be allowed to continue using the Cash Management System and should not be required to open new bank accounts.

22.      Unless otherwise ordered by the Court, the U.S. Trustee Guidelines require a debtor to, among other things, establish one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes), close all existing bank accounts and open new debtor in possession accounts, maintain a separate debtor in possession account for cash collateral, obtain checks that bear the designation "debtor in possession," and reference the bankruptcy case number and the type of account on such checks.

23.      The continuation of the Cash Management System is nevertheless permitted pursuant to Bankruptcy Code section 363(c)(1), which authorizes debtors in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  Bankruptcy Code section 363(c)(1) also allows a debtor in possession to engage in the ordinary course transactions required to operate its business without additional oversight from its creditors or the court.  *See, e.g., Med. Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm of Unsecured Creditors of Crystal*

*Apparel, Inc.* (*In re Crystal Apparel, Inc.*, 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of Bankruptcy Code section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Bankruptcy courts within the Second Circuit have held that a transaction qualifies as "ordinary course" if it is of a type that is commonly undertaken within the debtor's industry. *In re Velo Holdings Inc.*, 472 B.R. 201, 211-12 (Bankr. S.D.N.Y. 2012).

24.     Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter," *see In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987), and have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

25.     Here, requiring the Debtors to adopt a new, segmented cash management system at this critical stage of the chapter 11 cases would be expensive and disruptive and create unnecessary administrative burdens. Further, the Debtors would be subject to significant administrative burdens and expenses because they would need to execute new signatory cards and depository agreements and create an entirely new manual system for issuing checks and

paying post-petition obligations, all as would otherwise be required by the U.S. Trustee Guidelines.  *See* U.S. Trustee Guidelines, at 2-3.

26.     By contrast, maintaining the current Cash Management System would ensure a smooth transition into chapter 11 by, among other things, minimizing delays in paying post-petition debts and eliminating administrative inefficiencies. Importantly, the Cash Management System provides the Debtors with the ability to, among other things, quickly create status reports on the location and amount of funds, which allows the Debtors' management team to track and control such funds, ensure cash availability and reduce administrative costs through a centralized method of coordinating the collection and movement of funds.

27.     The Debtors satisfy the standards for maintaining an existing cash management system.  The Debtors have utilized the Cash Management System in its current form for years as part of their ordinary and usual business practices, and as such, the Debtors believe the continued use of the Cash Management System falls within the purview of ordinary course transactions permitted under Bankruptcy Code section 363(c)(1). In addition, the Debtors respectfully submit that parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that payments will not be made on account of obligations incurred before the Petition Date, other than those authorized by the Court.  Specifically, with the assistance of their professional advisors, the Debtors have implemented internal protocols that prohibit payments on account of prepetition debts, including prepetition intercompany debts, without the prior approval of the Debtors' finance department. The Debtors will continue to work closely with the Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval. In light of such protective

measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

28.     Accordingly, the Debtors respectfully request that the Court authorize the continued use of the existing Cash Management System to facilitate the Debtors' transition into chapter 11. Specifically, the Debtors respectfully request that the Court authorize the Banks to maintain, service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business. The Debtors further respectfully request that the Court authorize and direct the Banks to receive, process, honor and pay any and all checks, wire transfer, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or subsequent to the Petition Date.[3] The Debtors also respectfully request that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored post-petition. Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.

29.     Finally, the Debtors respectfully request that the Court authorize the Debtors to continue to pay the Bank Fees, including any prepetition Bank Fees, and further authorize the

---

[3] The Debtors also request authority for the Cash Management Banks to honor any check, draft, or other notification that the Debtors advised the Cash Management Banks to have been drawn, issued or otherwise presented prior to the Petition Date only to the extent authorized by order of the Court.

Banks to chargeback returned items to the Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

30.     Courts in this and other districts specifically have authorized debtors to maintained and continue using their existing cash management systems and prepetition bank accounts. *See In re Tops Holding II Corp.,* Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In Re BCBG Max Azria Glob. Holdings, LLC,* Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Fairway Grp. Holdings Corp.,* Case No. 16-11241 (MEW) (Bankr. S.D.N.Y. Jun. 1, 2016); *In re The Great Atl. & Pac. Tea Co.,* Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. August 11, 2015); *In re Chassix Holdings, Inc.,* Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 13, 2015); *In re MPM Silicones, LLC,* Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014); *In re dELiA*s, INC.,* Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. Dec. 24, 2014); *In re Inversiones Alsacia S.A.,* Case No. 14-12896 (MG) (Bankr. S.D.N.Y. Dec. 4, 2014); *In re SIGA Techs., Inc.,* Case No. 14-12623 (SHL) (Bankr. S.D.N.Y. Oct. 23, 2014).

## II.     The Court Should Authorize the Debtors to Continue Using Debit, Wire, Credit Card and ACH Payments

31.     The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check. In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement. As discussed above, in the ordinary course of business, the Debtors conduct transactions through ACH transfers and other similar methods. In addition, a sizable percentage of the Debtors' customer receipts are received through credit card and cash payments. The Debtors also utilize a paycard account to pay for certain payroll expenses. If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, credit card or other similar methods is impaired, the

Debtors may be unable to perform under certain payroll obligations, their business operations

may be unnecessarily disrupted, and their estates will incur additional costs.

### III.   The Court Should Authorize the Debtors to Continue Using the Existing Business Forms

32.     To avoid disruption of the Cash Management System and unnecessary expense,

the Debtors request that they be authorized to continue to use their business forms substantially

in the form existing immediately before the Petition Date, without reference to their status as

debtors in possession. The Debtors submit that the continued use of the Business Forms will not

prejudice parties in interest because parties doing business with the Debtors undoubtedly will

know of the Debtors' status as debtors in possession. Such relief will avoid unnecessary

expenses and administrative delays at this critical time.

33.     Courts in this circuit routinely allow debtors to use their prepetition business

forms without the "debtor in possession" label. *See, e.g., In re BCBG Max Azria Glob. Holdings,*

*LLC*, No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) [Docket No. 245]; *In re Limited*

*Stores Co.*, No. 17-10124 (KJC) (Bankr. D. Del. Feb. 16, 2017) [Docket No. 230].

### IV.   The Court Should Authorize the Debtors to Continue Engaging in Post-petition Intercompany Transactions in the Ordinary Course and Should Afford Administrative Expense Status to Post-petition Intercompany Transactions Among the Debtors

34.     Allowing the Debtors to engage in Post-petition Intercompany Transactions is in

the best interests of the Debtors' estates and their creditors, and the Debtors seek authority to

enter into such Post-petition Intercompany Transactions in the ordinary course of business.

Because the Debtors engage in Intercompany Transactions on a regular basis and such

transactions are common among similar enterprises, the Debtors respectfully submit that Post-

petition Intercompany Transactions arising in the ordinary course are authorized as a matter of

law pursuant to Bankruptcy Code section 363(c)(1), and thus, do not require the Court's

13

approval.[4] The Debtors will continue to maintain records of Post-petition Intercompany Transactions, including records of all current intercompany accounts receivables and payables, to facilitate parties' access to information where reasonably requested, in accordance with their current Intercompany Claims tracking system.

35.    The Debtors respectfully submit that the relief requested herein fairly balances the Debtors' needs to ensure continued access to their Cash Management System, minimize disruption, and preserve value, on the one hand, with the interests of their stakeholders in transparency, on the other hand. The requested relief will also ensure that a Debtor's estate will not be unduly burdened by the cost of transfers to, or on behalf of, Debtor affiliates. As noted above, the Debtors request authority to continue Post-petition Intercompany Transactions in the ordinary course (including with respect to "netting" or setoffs of post-petition Intercompany Claims arising in the ordinary course).[5]

36.    Additionally, the Debtors respectfully request, pursuant to Bankruptcy Code section 503(b)(1), that this Court order that all Intercompany Claims arising after the Petition Date be afforded administrative expense priority. The Debtors believe that such relief is necessary to ensure that each entity using funds that flow through the Cash Management System will continue to bear the ultimate responsibility for its ordinary-course transactions with

---

[4] Nevertheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a post-petition basis.

[5] Bankruptcy Code section 553(a) provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). A creditor need only establish two elements before a setoff may be asserted—mutuality and timing. *See Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re Bennett Funding Grp., Inc.)*, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997), *aff'd* 146 F.3d 136 (2d Cir. 1988). The Cash Management System allows the Debtors to track all obligations owing between related entities and thereby ensures that all setoffs of Intercompany Claims on account of Post-petition Intercompany Transactions will meet both the mutuality and timing requirements of Bankruptcy Code section 553. Therefore, the Debtors respectfully request that the Debtors expressly be authorized to set off post-petition Intercompany Claims between a Debtor and another Debtor.

affiliates, and a particular Debtor's estate will not be required to fund the operations of other

Debtors without adequate recompense.

37.     Such relief is consistent with the relief granted by Courts in this jurisdiction and

others in similarly situated matters.  *See, e.g., In re BCBG Max Azria Global Holdings, LLC*, No.

17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) [Docket No. 245]; *In re Avaya Inc*., No. 17-

10089 (SMB) (Bankr. S.D.N.Y. Jan. 23, 2017) [Docket No. 56] (interim order); *In re Sabine Oil*

*& Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015) [Docket No. 315]; *In re*

*Patriot Coal Co*., No. 15-32450 (KLP) (Bankr. E.D. Va. May 13, 2015) [Docket No. 53].

## V.     Cause Exists for Waiving the Deposit Guidelines of Bankruptcy Code Section 345 and Certain of the U.S. Trustee Guidelines

38.     All of the Bank Accounts comply with Bankruptcy Code section 345(b) because

such Bank Accounts are maintained at banks insured by federal agencies, such as the Federal

Deposit Insurance Corporation (the "FDIC"). *See* 11 U.S.C. § 345(b). As of the Petition Date,

upon information and belief, all of the Debtors' Bank Accounts are held at Banks insured by the

FDIC. Thus, these Banks are well-capitalized and financially stable institutions, and the Debtors

request that the Court waive the requirements of Bankruptcy Code section 345(b) and the U.S.

Trustee Guidelines with respect to authorized depository requirements.

39.     Courts in this district and in other jurisdictions have liberally construed the

requirements of Bankruptcy Code section 345(b) that the debtor in possession obtain a bond

from any entity with which their money is deposited. In those instances, courts have waived the

requirements of Bankruptcy Code section 345(b) and replaced them with alternative procedures.

*See, e.g., In re NII Holdings, Inc*., Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. May 21, 2015)

[Docket No. 750]; *In re LightSquared, Inc.*, Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. May

15, 2012 (interim order)) [Docket No. 36] (Bankr. S.D.N.Y. June 11, 2012 (final order)) [Docket

No. 115]; *In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 4, 2012 (interim order)) [Docket No. 39] (Bankr. S.D.N.Y. May 30, 2012 (final order)) [Docket No. 180]; *In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Jan. 20, 2012 (interim order)) [Docket No. 53] (Bankr. S.D.N.Y. Feb. 16, 2012 (final order)) [Docket No. 376]; and *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 29, 2011 (interim order)) [Docket No. 51] (Bankr. S.D.N.Y. Feb. 7, 2012 (final order)) [Docket No. 1052]. Cause exists for a similar waiver in these cases.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

40.      Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to (a) continue using their existing Cash Management System, Bank Accounts, and Business Forms, (b) honor certain prepetition obligations thereto, (c) continue to perform Intercompany Transactions consistent with historical practice, (d) grant administrative expense status to post-petition Intercompany Claims and (e) waive deposit requirements is integral to the Debtors' ability to ensure a smooth transition of their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

41.      To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a)

and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

42.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' or any other party-in-interest's rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code section 365.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be, nor should it be construed as an admission as to the validity of, any claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

### NOTICE

43.    The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to Webster Bank, N.A. (Attn: Daniel E. Burgoyne, Esq.); (d) counsel to any statutory committee appointed in the chapter 11 cases; (e) the United States Attorney's Office for the Southern District of New York; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Interim Order granting the relief requested in the Motion and such other and further relief as may be just and proper, and (b) schedule a final hearing on the Motion as soon as is otherwise practicable thereafter to consider entry of the Proposed Final Order.

Dated: June 25, 2020
New York, New York

/s/ *Jeffrey A. Wurst*

Jeffrey A. Wurst
Jack Dayon
**ARMSTRONG TEASDALE LLP**
919 Third Avenue, 37th Floor
New York, NY  10222
Tel:     (212) 409-4400
Email: jwurst@atllp.com
          jdayon@atllp.com


-and-

Erin M. Edelman
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Tel:     (314) 621-5070
Email: eedelman@atllp.com


*Proposed Counsel to the Debtors and Debtors in
Possession*

## **EXHIBIT A**

**Bank Accounts**

**Bank Accounts**

| Entity | Bank Name | Account Number | Account Type |
|---|---|---|---|
| Tanya Creations, LLC | Centreville Bank | Ending 3992 | Operating Account |
| Tanya Creations, LLC | Bank of America, N.A. | Ending 4265 | Operating Account |
| Tanya Creations, LLC | Webster Bank, N.A.[1] | Ending 7643 | |

---

[1] The Debtors' Bank Account with Webster Bank, N.A. is still open; however, the Debtors have discontinued its use.

**<u>Exhibit B</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| | ) |
| In re: | )    Chapter 11 |
| | ) |
| PREMIERE JEWELLERY, INC, et al.,[1] | )    Case No. 20-11484 |
| | ) |
| | )    (Joint Administration Requested) |
| Debtors. | ) |
| | ) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE USING THE CASH MANAGEMENT SYSTEM AND (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (II) AUTHORIZING CONTINUED INTERCOMPANY TRANSACTIONS; (III) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POST-PETITION INTERCOMPANY PAYMENTS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order" or "Order"): (a) authorizing, but not directing, the Debtors (i) continue to operate the Debtors' cash management system (ii) honor certain prepetition obligations related thereto, (iii) maintain existing business forms, and (iv) continue to maintain business relationships with each other consistent with historical practice; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §157(b)(2), and that this Court may enter a final order

---

[1] The Debtors in these cases are each incorporated or organized in the state of Rhode Island, and along with the last four digits of each Debtor's federal tax identification number are: Premiere Jewellery, Inc. [0250]; Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043]; ETYM Properties, LLC [4377]; and PJT, LLC [3105]. The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 1016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to such terms in the motion.

1

consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is property pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors provided appropriate notice of the Motion and the relief requested therein in accordance with the Bankruptcy Rules and the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules") and the opportunity for a hearing under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED on an interim basis to the extent set forth herein.

2.     The Debtors are authorized and empowered pursuant to sections 105(a), 363, 364, 503, and 507 of the Bankruptcy Code to continue using their integrated cash management system described in the Motion (the "Cash Management System") and to collect, concentrate, and disburse cash in accordance with the Cash Management System, including intercompany funding among Debtor affiliates.

3.     The Debtors are authorized but not directed to, on an interim basis and in their sole discretion: (a) continue using the Cash Management System and honor any prepetition obligations related to the use thereof; (b) designate, maintain, close, and continue to use on an

interim basis any or all of their existing Bank Accounts, including, but not limited to, the Bank

Accounts identified on <u>Exhibit A</u> attached to the Motion, in the names and with the account

numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds

from the Bank Accounts by all means, including checks, wire transfers, ACH transfers, and other

debits; (d) treat their prepetition Bank Accounts for all purposes as debtor in possession

accounts; and (e) open new debtor in possession Bank Accounts; *provided that*, in the case of

each of (a) through (e), such action is taken in the ordinary course of business and consistent

with prepetition practices.

4.      For banks at which the Debtors hold Bank Accounts that are not party to a

Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith

effort to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the

U.S. Trustee within 30 days of the Petition Date. The U.S. Trustee's rights to seek further relief

from this Court on notice in the event that the aforementioned banks are unwilling to execute a

Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

5.      The Debtors are authorized to deposit their cash in the Bank Accounts consistent

with their prepetition practices and the Cash Management System. The Debtors are relieved from

the obligations under section 345(b) of the Bankruptcy Code and the requirements of the U.S.

Trustee Guidelines to obtain a bond from any entity with which money is dipositive or

maintained in the Bank Accounts.

6.      The Debtors are authorized, but not directed, on an interim basis and in their sole

discretion, to continue using, in their present form, the Business Forms, as well as checks and

other documents related to the Bank Accounts existing immediately before the Petition Date,

including electronic versions of the Debtors' Business Forms, checks, and other documents related to the Bank Accounts.

7.      Except as otherwise provided in this Interim Order and only to the extent sufficient funds standing in the Debtors' credit are available in each applicable Bank Account, Banks at which the Bank Accounts are maintained are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, consistent with prepetition practices, and to receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH and other transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided that* the Debtors will instruct the Banks as to which checks, drafts, wire transfers (excluding any wire transfers or ACH transactions that the Banks are obligated to settle), or other items presented, issued, or drawn, shall not be honored. Each of the Debtors' existing depository and disbursement Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Debtors' Bank Accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors' Bank Accounts with such cash bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

4

8.      Except for those checks, drafts, wires or other ACH transfers that are authorized or required to be honored under an order of the Court, no Debtor shall instruct or request any Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date.

9.      Except otherwise provided in this Interim Order, the Banks are authorized to charge, and the Debtors are authorized, but not directed, to pay, honor, or allow, prepetition and post-petition fees, costs, charges, and expenses, including the Bank Fees, and charge back returned items, whether such items were deposited prepetition or post-petition, to the Bank Accounts in the ordinary course of business and consistent with prepetition practices. Any such post-petition fees, costs, charges, and expenses, including the Bank Fees, or charge-backs that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

10.     The Debtors' credit card processors are authorized to process payments in the ordinary course of business, including the netting out of any fees and/or chargebacks whether arising before or after the Petition Date.

11.     With respect to Post-petition Intercompany Transactions occurring in the ordinary course of business (including with respect to netting or setoffs), the Debtors are authorized, but not directed, to continue such practices in the ordinary course of business.

12.     Any payment that is authorized by the Debtors and paid from a Bank Account by a Bank before the Petition Date (including any ACH payment such Bank is or becomes obligated to settle), any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, or any reimbursement or charge back for any coin and currency orders

provided by the Bank prior to the Petition Date shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

13.     Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all valid post-petition payments on account of a Post-petition Intercompany Transaction made in the ordinary course by a Debtor to another Debtor shall in each case be accorded administrative expense status, subject and junior to the claims, including adequate protection claims, granted in connection with any debtor in possession financing in accordance with any order(s) of this Court approving any post-petition secured debtor in possession financing and/or the use of cash collateral, except to the extent such Post-petition Intercompany Transactions are on account of antecedent debts.

14.     Except as otherwise set forth herein, those certain existing deposit agreements between the Debtors' Banks shall continue to govern the post-petition cash management relationship between the Debtors and the Banks, and all provisions of such agreements, including without limitation, the termination and fee provisions, shall remain in full force and effect. Either the Debtors or the Cash Banks may, subject to the entry of the Final Order, implement changes to the Cash Management System and procedures in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, including, without limitation, the opening and closing of Bank Accounts.

15.     The Debtors are authorized, but not directed, to open new bank accounts, so long as any such new account is:  (a) with one of the Debtors' existing Banks; or (b) with a bank that is (i) insured with the FDIC and (ii) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee Guidelines; and (c) the Debtors provide notice to the U.S. Trustee and the Notice Parties of the opening of such account; *provided that* each account opened by any

of the Debtors on or after the Petition Date at any bank shall, for purposes of this Interim Order, be deemed a Bank Account as if it had been listed on Exhibit A attached to the Motion, and the bank at which such new account is maintained shall, for purposes of this Interim Order, be deemed a Bank.

16.     Nothing contained herein shall prevent the Debtors from closing any Bank Accounts as they may deem necessary and appropriate, to the extent consistent with any orders of this Court relating thereto, and any relevant Bank is instructed to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any Bank Account to the U.S. Trustee and the Notice Parties.

17.     Notwithstanding any other provision of this Interim Order, should any Bank honor a prepetition check or other item drawn on any account that is the subject of this Interim Order:  (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, such Bank shall not be deemed to be nor shall be liable to the Debtors, their estates or any other person or entity, or otherwise be in violation of this Interim Order.  Any of the Debtors' Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

18.     As soon as practicable after entry of this Interim Order, the Debtors shall cause a copy of this Interim Order to be served on the Banks.

19.     Except as otherwise provided herein, nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "Final Hearing").

20.     Nothing contained in this Motion or Interim Order, or any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

21.     If no objections to the relief granted herein on a permanent basis are timely served and filed in accordance with this Interim Order, the Court may enter a final order granting the relief herein without further notice or hearing.

22.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

23.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

24.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

25.     Notwithstanding anything to the contrary contained in this Interim Order, any payment made or to be made under this Interim Order, any authorization contained in this Interim Order, or any claim for which payment is authorized hereunder, shall be subject to any orders of this Court approving any debtor in possession financing for, or any use of cash

8

collateral by, the Debtors, and any documents providing for such debtor in possession financing and the budget governing such debtor in possession financing and use of cash collateral.

26.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

27.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry, for cause.

28.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

29.     All time periods set forth in this Interim Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.     The Debtors are authorized to take all action reasonably necessary to effectuate the relief granted in this Order in accordance with the Motion.

31.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

32.     No later than two (2) business days after the date of this Order, the Debtors shall serve a copy of the Order on the Notice Parties and shall file a certificate of service no later than 24 hours after service.

33.     The Final Hearing on the Motion shall be held on _____, 2020, at _____ (Prevailing Eastern Time), and any objections or responses to the Motion shall be filed and served so as to be received no later than _____ (Prevailing Eastern Time) on _____, 2020.

New York, New York
Dated: _____, 2020

_____
United States Bankruptcy Judge

**Order Prepared By:**

Jeffrey A. Wurst
Jack Dayon (*pro hac vice motion* pending)
Armstrong Teasdale LLP
919 Third Avenue, 37th Floor
New York, NY 10222
Telephone: (212) 409-4400
Email: jwurst@atllp.com
Email: jackdayon@atllp.com

Erin M. Edelman (*pro hac vice motion* pending)
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Email: eedelman@atllp.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| PREMIERE JEWELLERY, INC, et al.,[1] | ) Case No. 20-11484 |
| | ) |
| | ) (Joint Administration Requested) |
| Debtors. | ) |
| | ) |

**FINAL ORDER (I) AUTHORIZING**
**THE DEBTORS TO (A) CONTINUE USING THE**
**CASH MANAGEMENT SYSTEM AND (B) MAINTAIN**
**EXISTING BANK ACCOUNTS AND BUSINESS FORMS;**
**(II) AUTHORIZING CONTINUED INTERCOMPANY TRANSACTIONS;**
**(III) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POST-**
**PETITION INTERCOMPANY PAYMENTS; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of a final order (this "Final Order" or "Order"): (a) authorizing, but not directing, the Debtors (i) continue to operate the Debtors' cash management system (ii) honor certain prepetition obligations related thereto, (iii) maintain existing business forms, and (iv) continue to maintain business relationships with each other consistent with historical practice; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this court may enter a final order consistent with

---

[1] The Debtors in these cases are each incorporated or organized in the state of Rhode Island, and along with the last four digits of each Debtor's federal tax identification number are: Premiere Jewellery, Inc. [0250]; Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043]; ETYM Properties, LLC [4377]; and PJT, LLC [3105]. The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 1016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to such terms in the Motion.

1

Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the relief requested therein in accordance with the Bankruptcy Rules and the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules") and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual basses set forth in the Motion and the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED on a final basis to the extent set forth herein.

2.    The relief granted in the Interim Order is hereby approved on a final basis.

3.    The Debtors authorized but not directed to, on an final basis and in their sole discretion: (a) continue using the Cash Management System and honor any prepetition obligations related to the use thereof; (b) designate, maintain, close, and continue to use on a final basis any or all of their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on **Exhibit A** attached to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (c)  deposit funds in and withdraw funds from the Bank Accounts by all means, including checks, wire transfers, ACH transfers, and other

debits; (d) treat their prepetition Bank Accounts for all purposes as debtor in possession accounts; and (e) open new debtor in possession Bank Accounts; *provided that*, in the case of each of (a) through (e), such action is taken in the ordinary course of business and consistent with prepetition practices.

4.      For banks at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith effort to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within 30 days of the Petition Date.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

5.      The Debtors are authorized to deposit their cash in the Bank Accounts consistent with their prepetition practices and the Cash Management System.  The Debtors are relieved from the obligations under section 345(b) of the Bankruptcy Code and the requirements of the U.S. Trustee Guidelines to obtain a bond from any entity with which money is dipositive or maintained in the Bank Accounts.

6.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, including electronic versions of the Debtors' business Forms, checks, and other documents related to the Bank Accounts.

7.      Except as otherwise provided in this Final Order and only to the extent sufficient funds standing in the Debtors' credit are available in each applicable Bank Account, Banks at which the Bank Accounts are maintained are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without

interruption and in the ordinary course of business, consistent with prepetition practices, and to receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH and other transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided that* the Debtors will instruct the Banks as to which checks, drafts, wire transfers (excluding any wire transfers or ACH Transactions that the Banks are obligated to settle), or other items presented, issued, or drawn, shall not be honored. Each of the Debtors' existing depository and disbursement Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Debtors' Bank Accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors' Bank Accounts with such cash bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

8.        Except for those checks, drafts, wires, or other ACH transfers that are authorized or required to be honored under an order of the Court, no Debtor shall instruct or request any Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for a payment after the Petition Date.

9.        Except as otherwise provided in this Final Order, the Banks are authorized to charge, and the Debtors are authorized, but not directed, to pay, honor, or allow, prepetition and post-petition fees, costs, charges, and expenses, including the Bank Fees, and charge back

4

returned items, whether such items were deposited prepetition or post-petition, to the Bank Accounts in the ordinary course.  Any such post-petition fees, costs, charges, and expenses, including the Bank Fees, or charge-backs are not so paid shall be entitled to priority as administrative expense pursuant to section 503(b)(1) of the Bankruptcy Code.

10.     The Debtors' credit card processors are authorized to process payments in the ordinary course of business, including the netting out of any fees and/or chargebacks whether arising before or after the Petition Date.

11.     Any payment that is authorized by the Debtors and paid from a Bank Account by a Bank before the Petition Date (including any ACH payment such Cash Management Bank is or becomes obligated to settle), any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, or any reimbursement or charge back for any coin and currency orders provided by the Banks prior to the Petition Date shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

12.     As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Banks.

13.     The U.S. Trustee Guidelines' requirement to establish separate accounts for tax payments is hereby waived.

14.     With respect to Post-petition Intercompany Transactions occurring in the ordinary course of business (including with respect to netting or setoffs), the Debtors are authorized, but not directed, to continue such practices in the ordinary course of business.

15.     Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all valid post-petition payments on account of a Post-petition Intercompany Transaction made in the ordinary course by a Debtor to another Debtor shall in each case be accorded administrative expense

status, subject and junior to the claims, including adequate protection claims, granted in connection with any debtor in possession financing in accordance with any order(s) of this Court approving any post-petition secured debtor in possession financing and/or the use of cash collateral, except to the extent such Post-petition Intercompany Transactions are on account of antecedent debts.

16.    Except as otherwise set forth herein, those certain existing deposit agreements between the Debtors' Banks shall continue to govern the post-petition cash management relationship between the Debtors and the Banks, and all provisions of such agreements, including without limitation, the termination and fee provisions, shall remain in full force and effect. Either the Debtors or the Banks may, without further Order of this Court, implement changes to the Cash Management System and procedures in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, including, without limitation, the opening and closing of Bank Accounts.

17.    The Debtors are authorized to open new bank accounts, so long as any such new account is:  (a) with one of the Debtors' existing Banks; or (b) with a bank that is (i) insured with the FDIC and (ii) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee Guidelines; and (c) the Debtors provide notice to the U.S. Trustee and the Notice Parties of the opening of such account; *provided that* each account opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Final Order, be deemed a Bank Account as if it had been listed on Exhibit A attached to the Motion, and the bank at which such new account is maintained shall, for purposes of this Final Order, be deemed a Bank.

18.    Nothing contained herein shall prevent the Debtors from closing any Bank Accounts as they may deem necessary and appropriate, to the extent consistent with any orders

6

of this Court relating thereto, and any relevant Bank is instructed to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any Bank Account to the U.S. Trustee and the Notice Parties.

19.     Notwithstanding any other provision of this Final Order, should any Bank honor a prepetition check or other item drawn on any account that is the subject of this Final Order: (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, such Bank shall not be deemed to be nor shall be liable to the Debtors, their estates or any other person or entity, or otherwise be in violation of this Final Order.  Any of the Debtors' Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

20.     Nothing contained in this Motion or Final Order, or any payment made pursuant to the authority granted by this Final Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

7

21.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

22.     Notwithstanding anything to the contrary contained in this Final Order, any payment made or to be made under this Final Order, any authorization contained in this Final Order, or any claim for which payment is authorized hereunder, shall be subject to any orders of this Court approving any debtor in possession financing for, or any use of cash collateral by, the Debtors, and any documents providing for such debtor in possession financing and the budget governing such debtor in possession financing and use of cash collateral.

23.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

24.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

25.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

26.     All time periods set forth in this Final Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

27.     No later than two (2) business days after the date of this Order, the Debtors shall serve a copy of the Order on the Notice Parties and shall file a certificate of service no later than 24 hours after service.

New York, New York
Dated: _____, 2020

_____
United States Bankruptcy Judge

**Order Prepared By:**

Jeffrey A. Wurst
Jack Dayon
Armstrong Teasdale LLP
919 Third Avenue, 37th Floor
New York, NY 10222
Telephone: (212) 409-4400
Email: jwurst@atllp.com
Email: jackdayon@atllp.com

Erin M. Edelman
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Email: eedelman@atllp.com