Jeffrey A. Wurst
Jack Dayon (*pro hac vice* motion pending)
**ARMSTRONG TEASDALE LLP**
919 Third Avenue, 37th Floor
New York, NY 10222
Tel:    (212) 409-4400
Email: jwurst@atllp.com
          jdayon@atllp.com

Erin M. Edelman (*pro hac vice*
motion pending)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Tel:    (314) 621-5070
Email: eedelman@atllp.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PREMIERE JEWELLERY, INC, et al.,[1] | Case No. 20-11484 |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION SEEKING ENTRY OF
## INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS
## TO PAY CERTAIN PREPETITION CLAIMS OF TRADE CLAIMANTS AND (II)
## GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of interim and final orders (the "Interim Order" and "Final Order," respectively) (i) authorizing the Debtors to pay certain prepetition claims of Trade Claimants and (ii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases are each incorporated or organized in the state of Rhode Island, and along with the last four digits of each Debtor's federal tax identification number are: Premiere Jewellery, Inc. [0250]; Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043]; ETYM Properties, LLC [4377]; and PJT, LLC [3105]. The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 1016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

<u>**JURISDICTION AND VENUE**</u>

1.      The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      The statutory bases for relief requested herein are sections 105, 363, 1107(a) and 1108 of title 11 of the United States Code, §§ 101-1532 (the "<u>Bankruptcy Code</u>") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

<u>**BACKGROUND**</u>

4.      Premiere Jewellery, Inc. and affiliated debtors in possession (collectively, the "<u>Debtors</u>" or the "<u>Company</u>") are a jewelry design, sales, and distribution enterprise, with headquarters located in East Providence, Rhode Island and offices also located in New York, NY and Qingdao and Yiwu, China. The Debtors design and distribute costume jewelry and hair goods and partner with major retailers, who then sell the Debtors' merchandise to consumers.

5.      On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Unites States Code (the "<u>Bankruptcy Code</u>"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.      A comprehensive description of the Debtors' operations and events leading to the commencement of these chapter 11 cases is set forth in the *Declaration of A. Howard Moser Pursuant to Rule 1007-2 of Local Bankruptcy Rules for the Southern District of New York* (the

"First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

**I.      Trade Claims Overview**

7.      As of the Petition Date, the Debtors owe approximately $3.2 million in total to all trade creditors. By this Motion, the Debtors seek authorization, but not direction, to pay, in equal bi-weekly installments over a period of one year commencing the later to occur of the execution of the Trade Agreement (as defined below) or the entry of an order of the Court authorizing the Company to enter into the Trade Agreement, the prepetition obligations of certain critical trade creditors in an aggregate not to exceed $2.0 million, which is the minimum amount necessary to preserve the Debtors' estates, allow the Debtors to continue to their operations seamlessly, and ensure a smooth chapter 11 process. As such, the Debtors request authorization to pay the prepetition claims of the following categories of trade creditors: (1) shippers and other lien claimants (the "Carriers") and (2) certain other essential vendors and service providers (the "Critical Vendors" and together with the Carriers, the "Trade Claimants"), and accrued in the ordinary course of business (collectively, the "Trade Claims").

*A. The Carriers*

8.      The Debtors depend on certain vendors to transport and store products (collectively, the "Carrier Products"). After leaving source factories in Asia, the Debtors' products go to consolidated freight stations in the applicable sourcing country before sailing on freight vessels to ports in the United States. From there, the products are sent to the Debtors' facilities before being delivered to stores. The Debtors also engage the Carriers to transport and deliver the Carrier Products throughout their supply chain. The Carriers regularly possess the Carrier Products belonging to the Debtors in the course of transporting and delivering the Carrier

Products. As of the Petition Date, certain Carriers have outstanding invoices for services provided to the Debtors before the Petition Date (the "Carriers Claims").

9.      Under the laws of certain jurisdictions, a Carrier may have a lien on the goods in its possession securing the charges or expenses incurred in connection with the transportation or storage of those goods. If the Debtors do not timely pay the Carriers Claims, the Carriers may assert possessory liens on the goods currently in their possession and refuse to deliver or release such goods until their invoices are paid. In addition, pursuant to Bankruptcy Code section 363(e), the Carriers, as bailees, may be entitled to adequate protection for any valid possessory lien.

10.     The refusal of Carriers to deliver or return the Debtors' goods as a result of not being paid would severely disrupt the Debtors' operations and potentially cost the Debtors a substantial amount of revenue. Accordingly, by this Motion, the Debtors seek authorization, but not direction, to commence paying, in installments pursuant to the terms of the Trade Agreement, outstanding prepetition obligations on account of the Carriers upon entry of the Proposed Interim Order and to continue to pay the Carriers in the ordinary course of business upon entry of the Proposed Final Order.

### B. The Critical Vendors

11.     The Debtors have spent significant time:  (1) reviewing and analyzing their books and records; (2) consulting operations managers and purchasing personnel; (3) reviewing contracts and supply agreements and (4) analyzing applicable law, regulations and historical practices to understand the Debtors' critical business relationships and suppliers of services—the loss of which would keep the Debtors from achieving the goals of the chapter 11 cases.  In this process, the Debtors considered a variety of factors, including:

- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining services from alternative sources;

4

- whether a vendor is a sole-source, limited-source or high-volume supplier of services critical to the Debtors' business operations;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether alternative vendors are available that can provide requisite services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including, pricing, transition expenses, professional fees and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor;

- the likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through use of the tools available in these chapter 11 cases; and

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse provide critical services on a post-petition basis.

12.     Following this analysis, the Debtors have identified certain Critical Vendors that are vital to the Debtors' operations and without which the Debtors would not be able to operate their business. By this Motion, the Debtors therefore request authorization, but not direction, to commence paying, in installments pursuant to the terms of the Trade Agreement, their outstanding prepetition obligations to certain Critical Vendors (the "Critical Vendor Claims") and to continue paying such Critical Vendors in the ordinary course during the pendency of these proceedings.[2]

## II.     The Trade Agreement

13.     In exchange for the payment of Trade Claims, the Debtors will request, subject to this Court's approval, that the Trade Claimants agree to certain post-petition trade terms with the

---

[2] Notwithstanding the relief requested herein, the Debtors reserve all of their rights and remedies under the Bankruptcy Code and other applicable law to pursue any cause of action against any Critical Vendor, including, but not limited to, a violation of the automatic stay pursuant to Bankruptcy Code section 362(a).

Debtors. Specifically, the Debtors seek authorization to condition payment of Trade Claims upon each Trade Claimant's agreement to (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the 12 months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms"), and (b) agree that they shall not be permitted to cancel any contract or agreement pursuant to which they provide services to the Debtors. Accordingly, the Debtors seek authorization to require certain Trade Claimants to enter into a contractual agreement evidencing such Customary Trade Terms, the forms (in English and Chinese) of which are attached hereto as Exhibit A (the "Trade Agreement").

14.    As fully outlined in the Trade Agreement, the Debtors propose that the Debtors pay the prepetition Trade Claims in equal bi-weekly installments over a period of one year commencing on the first business day of the month following the later to occur of the execution of the Trade Agreement or the entry of an order of the Court authorizing the Debtors to enter into the Trade Agreement. In addition, the Debtors shall pay all invoices for goods delivered by the Trade Claimant after the Petition Date (the "Post-Petition Administrative Claims") within ten (10) days of the date when such invoices become due and payable. Furthermore, the Debtors agree to exercise best efforts to obtain purchase order financing and if such financing is obtained and approved by the Court, upon the Trade Claimant's agreement to a discount for early payment in an amount equal to five (5) percent of the face amount of any invoice representing a Post-Petition Administrative Claim shall be paid within 20 days from the invoice date.

15.    The Debtors further request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter ceases to provide goods and services in accordance

with the Customary Trade Terms: (a) the Debtors may take any and all appropriate steps to recover from such Trade Claimant any payments made to it on account of its prepetition claim to the extent that such payments exceed the post-petition amounts then owing to such party; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if an outstanding post-petition balance is due from the Debtors to such party, (i) the Debtors may elect to re-characterize and apply any payment made pursuant to the relief requested by this motion to such outstanding post-petition balance, and (ii) such party will be required to repay to the Debtors such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## RELIEF REQUESTED

16.      By this Motion, and pursuant to Bankruptcy Code sections 105(a), 363, 1107(a) and 1108 and Bankruptcy Rules 6003 and 6004, the Debtors seek entry of the Interim Order and the Final Order, substantially in the forms attached hereto as <u>Exhibit B</u>: (a) authorizing the Debtors to pay in installments, as set forth in the Trade Agreement, certain prepetition claims held by the Trade Claimants; (b) authorizing the Debtors to continue paying the Trade Claimants in the ordinary course; (c) approving the form of the Trade Agreement; and (d) granting related relief.

17.      The Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## BASIS FOR RELIEF

18.      Courts in this district and others generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the

debtor's estate. *See, e.g., Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authority to pay prepetition claims of servicers). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 2002). As outlined below, in so doing, courts rely on several legal theories rooted in Bankruptcy Code sections 105(a), 363(b), 1107(a) and 1108.

19.    Section 363(b) of the Bankruptcy Code expressly contemplates the payment of prepetition claims. *See* 11 U.S.C. § 363(b) ("[The debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."). Courts have authorized payment of prepetition obligations under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so. *See In re Kmart Corp.,* 359 F.3d 866, 872 (7th Cir. 2004) (recognizing that payment of prepetition claims may be permitted under section 363, but holding that the debtor's evidentiary record did not support paying the prepetition claims of vendors); *In re Ionosphere Clubs, Inc.,* 98 B.R., at 175-76 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims when an appropriate business justification exists); *James A. Phillips*, 29 B.R. at 397-98 (relying on Bankruptcy Code section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

20.    Courts further recognize that payments to prepetition creditors are appropriate pursuant to Bankruptcy Code section 105(a) under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's

business. *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims); *In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its prepetition claim"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).

21.     Several courts apply the doctrine of necessity where payment of a prepetition claim (a) is "necessary for the successful reorganization of the debtor," (b) falls within "the sound business judgment of the debtor," and (c) will not "prejudice other unsecured creditors." *United Am.*, 327 B.R. at 782; *see also In re Universal Fin., Inc.*, 493 B.R. 735, 739-40 (Bankr. M.D. N.C. 2013) (applying the *United American* three-part test); *In re Corner Home Care, Inc.*, 438 B.R. 122, 127-29 (Bankr. W.D. Ky. 2010) (same). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere*, 98 B.R. at 177). The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere*, 98 B.R. at 175-76; *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately");

*In re Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization").

22.     Moreover, pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

23.     The Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm, and is justified under Bankruptcy Code sections 105(a), 363(b), 1107 and 1108.

24.     As discussed above, a Carrier may have a lien on goods in its possession that secures the charges or expenses incurred in connection with the transportation of the goods. The Carrier may be unwilling to release goods in their possession on which they may be entitled to liens because releasing possession of goods may convert the status of their claims against the Debtors from secured to unsecured. Therefore, unless the Court authorizes the Debtors to pay the Carriers Claims, it is unlikely the Debtors will be able to obtain goods currently in transit.  If the Carriers possess lien rights or have the ability to exercise "self-help" remedies to secure payment of their claims, failure to satisfy the obligations owed to the Carriers could have a material adverse effect that ultimately may devastate the Debtors' operations to the detriment of the Debtors' creditors.

25.     In addition, pursuant to Bankruptcy Code section 363(e), the Carriers, as bailees, may be entitled to adequate protection of a valid possessory lien. Given that the value of the Carrier Products generally will far exceed the value of their respective claims, the satisfaction of prepetition claims of such parties will not harm creditors—and, in fact, will benefit them—because such payments will help preserve the going-concern value of the Debtors' business. Furthermore, failure to pay the Critical Vendors as outlined herein could result in significant disruptions to the Debtors' operations and impair the Debtors' ability to successfully reorganize. Seventy-five percent (75%) of the Debtors' annual sales occur during the second half of the year. These Trade Claimants are comprised of the most necessary factories and logistics providers, without whom the Debtors will be unable to procure and timely deliver product for the holiday season. Moreover, the Debtors seek the pay the prepetition claims of the Trade Claimants in installments, thereby lessening any financial strain on the Debtors estates, but at the same time, allowing the Debtors to continue conducting business with the Trade Claimants in the ordinary

course. Because the Debtors believe the relief sought in this Motion is necessary to preserve the value of their estates for the benefit of all stakeholders in these chapter 11 cases, this Motion should be granted.

26.     Courts in this district routinely grant similar relief as requested herein. *See, e.g., In re Sears Holding Corporation*, Case No. 18-23538-rdd (RDD) (S.D.N.Y Nov. 16, 2018) [Docket No. 793] (authorizing debtors to pay up to $90 million in critical vendor claims on a final basis); *In re Westinghouse Elec. Co., LLC*, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 1, 2017) [Docket No. 640] (authorizing debtors to pay vendors' claims entitled to priority under section 503(b)(9) of the Bankruptcy Code); *In re Aéropostale, Inc.,* Case No. 16-11275 (SHL) (Bankr. S.D.N.Y June 3, 2016) [Docket No. 244] (authorizing payment of claims entitled to administrative priority pursuant to section 503(b)(9) up to $4 million); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Aug. 17, 2015) [Docket No. 180] (approving payment of prepetition claims of shippers and warehousemen).

## PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

27.     Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Trade Claims. The Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Thus, the Debtors request that the Court authorize, but not direct, all applicable financial institutions to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Trade Claims; *provided that* sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

28.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to pay these claims and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. The relief requested is necessary for the Debtors to operate their business in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

29.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, failure to grant the relief requested herein would be detrimental to the Debtors, their estates and all stakeholders. For this reason and those set forth above, the Debtors submit that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## RESERVATION OF RIGHTS

30.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' or any other party-in-

13

interest's rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code section 365. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## NOTICE

31.    The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to Webster Bank, N.A. (Attn: Daniel E. Burgoyne, Esq.);  (d) counsel to any statutory committee appointed in the chapter 11 cases; (e) the United States Attorney's Office for the Southern District of New York; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Proposed Interim Order and Proposed Final Order (i) granting the relief requested herein and (ii) granting such other relief as is just and proper.


*[Remainder of page intentionally left blank.]*

14

Dated: June 25, 2020
        New York, New York

/s/ *Jeffrey A. Wurst*

Jeffrey A. Wurst
Jack Dayon (*pro hac vice* pending)
**ARMSTRONG TEASDALE LLP**
919 Third Avenue, 37th Floor
New York, NY  10222
Tel:     (212) 409-4400
Email: jwurst@atllp.com
            jdayon@atllp.com

-and-

Erin M. Edelman (*pro hac vice* pending)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Tel:     (314) 621-5070
Email: eedelman@atllp.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Exhibit A**

**Form Trade Agreement**

**THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT STATEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

Tanya Creations, LLC (the "Company"), on the one hand, and the Vendor identified in the signature block below (the "Vendor"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the latest date in the signature blocks below.

## Recitals

WHEREAS on _____, 2020 (the "Petition Date"), the Company and certain affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

WHEREAS on [●], 2020, the Court entered its *[Interim/Final] Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Trade Claimants and (II) Granting Related Relief* (the "Critical Vendor Order") [Docket No. [●]] authorizing the Debtors on [an interim/a final] basis, under certain conditions, to pay the prepetition claims of certain Vendors, including the Vendor, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, the Vendor delivered goods to the Company and/or performed services for the Company, and the Company paid the Vendor for such goods and/or services, according to customary trade terms.

WHEREAS the Company and the Vendor (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims the Vendor may hold against the Company.

## Agreement

1.      Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.      Vendor Payment. The Vendor represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to the Vendor, under all purchase orders and contracts between the Company and Vendor ("Purchase Orders") through the Petition Date, is $[___] (the "Agreed Vendor Pre-Petition Claim"). Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Vendor

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendor Order.

Pre-Petition Claim, pay the Vendor $[___] on account of its Agreed Vendor Pre-Petition Claim (the "<u>Vendor Payment</u>") (without interest, penalties, or other charges) in equal bi-weekly installments over a period of one year commencing on the first business day of the month following the later to occur of the execution of this Agreement or the entry of an Order of the Court authorizing the Company to enter into this Agreement.  In addition, the Company shall pay all invoices for goods delivered by Vendor after the Petition Date (the "<u>Post-Petition Administrative Claims</u>") within ten (10) days of the date when such invoices become due and payable as provided for in the Memo of Understanding entered into by and between the Vendor and the Company dated _____ (the "<u>MOU</u>"). Company agrees to exercise best efforts to obtain purchase order financing and if such financing is obtained and approved by the Court, upon Vendor's agreement to a discount for early payment (the "<u>Early Payment Discount</u>") in an amount equal to 5% of the face amount of any invoice representing a Post-Petition Administrative Claim shall be paid within 20 days from the invoice date.  The Early Payment Discount shall be in addition to any rebate or contribution otherwise agreed to by the Vendor and Company.

   3. <u>Agreement to Supply</u>.

     a. The Vendor shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services from the Vendor (to the extent the Company seeks such goods and/or services under Purchase Orders or via any other manner), for the duration of the Debtors' chapter 11 cases based on the terms contained in the MOU. "Duration of the Debtors' chapter 11 cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets pursuant to Bankruptcy Code section 363 resulting in a cessation of the Company's business operations; (iii) the liquidation of the Company or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; or (iv) a default under any of the Company's debtor-in-possession financing facilities that results in the Company losing access to funds available under any such facility.

     b. The MOU may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed to in writing by the Parties.

     c. The Vendor shall continue to honor all vendor rebates and contributions unaffected by bankruptcy filing and the Company is authorized to continue to apply all such vendor rebates and contributions towards future orders in the ordinary course of business.

     d. The Vendor shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business pursuant to customary trade terms.

     e. The Vendor agrees that it may not cancel any order.  In the event Vendor does cancel in violation of this Agreement payments on the Agreed Vendor Pre-Petition Claim shall terminate and Vendor shall be obligated to repay the Company for all amounts received in excess of what it would have received as its distribution as a general unsecured creditor and the Company may setoff payments made on the Agreed Vendor Pre-Petition Claim against future amounts that may be owing to the Vendor.

f.      Vendor represents and agrees that it shall not unreasonably withhold any bill of lading and shall release all bills of lading upon delivery of goods to the Company or its agent without regard to the time of its receipt of payment from the Company.

4.      <u>Electronic Trade Terms</u>

The parties agree that the electronic vendor portal data (EVP) procedures or Internet/Web based documents may be used by Company in lieu of conventional, paper-based documents for the purchase and sale of merchandise. The Vendor is accountable for all EVP information to be provided regardless of the provider or applications used to retrieve the data. Each transaction  made pursuant to this Agreement (and any related communication) shall also be subject to the terms and conditions contained in this Agreement and such practices and procedures established by Company from time to time.

5.      <u>Other Matters</u>.

a.      The Vendor agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims the Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. The Vendor agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the customary trade terms then in effect. The Vendor Payment will be made concurrently with payment of other outstanding administrative claims as provided in a confirmed plan.

b.      The Vendor will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

c.      The Vendor will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Company arising from prepetition agreements or transactions. Furthermore, if the Vendor has taken steps to file or assert such a lien prior to entering into this Trade Agreement, the Vendor will promptly take all necessary actions to remove such liens and hereby authorizes the Company to take any such actions on its behalf.

6.      <u>Breach</u>.

a.      In the event that the Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a "<u>Vendor Breach</u>"), upon written notice to the Vendor, the Vendor shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Company from the postpetition receivables then owing to the Vendor from the Company.

b.     In the event that the Company recovers the Vendor Payment pursuant to Section 5(a) hereof or otherwise, the Agreed Vendor Pre-Petition Claim shall be reinstated as if the Vendor Payment had not been made.

c.     The Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Company. Accordingly, the Vendor agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. The Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

7.     <u>Notice</u>.

If to the Vendor, then to the person and address identified in the signature block hereto.

If to the Company:

Tanya Creations, LLC
360 Narragansett Park Drive
East Providence, RI 02916
Ph    401-400-6101
Attn: A. Howard Moser
ahmoser@tanyacreations.com

with a copy to

Jeffrey A. Wurst
Armstrong Teasdale LLP
919 Third Avenue, 37th Floor
New York, NY  10222
Email: jwurst@atllp.com

8.     <u>Representations and Acknowledgements</u>. The Parties agree, acknowledge and represent that:

a.     the Parties have reviewed the terms and provisions of the Critical Vendor Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Vendor Order;

b.     any payments made on account of the Agreed Vendor Pre-Petition Claim shall be subject to the terms and conditions of the Critical Vendor Order;

4

     c.    if the Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Critical Vendor Order, the Bankruptcy Code, or applicable law; and

     d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from the Vendor to the Company, until a ruling of the Court is obtained.

    9.    <u>Confidentiality</u>. In addition to any other obligations of confidentiality between the Vendor and Company, the Vendor agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) customary trade terms (collectively, the "<u>Confidential Information</u>"); *provided* that if any party seeks to compel the Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or the Vendor intends to disclose any or all of the Confidential Information, the Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; provided, further, that, if such remedy is not obtained, the Vendor shall furnish only such information as the Vendor is legally required to provide.

    10.    <u>Trade Secrets</u>.  Vendor agrees and acknowledges that in the course of its manufacturing, supply and delivery of products to the Company it has access to and use of the Company's designs, patterns, and other information relating to the Company's business methods and other proprietary information (the "<u>Trade Secrets</u>").  As part of the inducement for the Company to enter into this Agreement with the Vendor, Vendor agrees to protect Company's Trade Secrets with no less than the same degree of diligence that it treats its own trade secrets and agrees to indemnify and hold the Company harmless from and against any loss, expense, damage, and costs incurred by the Company as a result of the Vendor's failure to protect the Company's Trade Secrets including, but not limited to, any Trade Secrets (including product designs) falling into the hands of any competitor of the Company.

    11.    <u>Miscellaneous</u>.

     a.    The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

     b.    This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements (including all Purchase Orders) between such Parties. If any provisions under the Purchase Orders or other agreements between the Company and the Vendor contradict with  the terms set forth in this Trade Agreement, this Trade Agreement shall prevail. This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

Moreover, Vendor agrees to vote all claims now or hereafter beneficially owned by Vendor in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith, if such chapter 11 plan provides for a treatment of any Agreed Vendor Pre-Petition Claim that is materially consistent with this Agreement.

c.      Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned by the Vender, in whole or in part, whether by operation of law or otherwise without the prior written consent of the Company. Any purported assignment without such consent shall be void and shall void the Vender's rights under this Agreement. In the event Vendor does make an assignment in violation of this Agreement payments on the Agreed Vendor Pre-Petition Claim shall terminate and Vendor shall be obligated to repay the Company for all amounts received in excess of what it would have received as its distribution as a general unsecured creditor and the Company may setoff payments made on the Agreed Vendor Pre-Petition Claim against future amounts that may be owing to the Vendor.

d.      This Trade Agreement is subject to the laws of the State of New York. Any dispute hereunder shall be subject to the exclusive jurisdiction of the state and federal courts located in New York, New York.

e.      Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

f.      This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

g.      The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement and the Purchase Orders.

h.      This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

AGREED AND ACCEPTED AS OF THE LATEST DATE SET FORTH BELOW:

**TANYA CREATIONS, LLC**                    **[VENDOR]**


By: _____          By:
        A. Howard Moser, COO             Title:
                                        Address:

                                        Date:

6

<u>附件 **A**</u>

交易协议模板

**本交易协议不构成对接受或拒绝破产法第 11 章的重组计划的请求。除非破产法院已经就任何该等破产法第 11 章的重组计划批准了披露声明，否则不得做出接受或拒绝破产法第 11 章的重组计划的请求。本交易协议声明中的信息可能会随时更改。本交易协议声明并不构成出售任何证券的要约，也不寻求购买任何证券的要约。**

## 交易协议

Tanya Creations, LLC （"公司"）与下述签署栏中所指的供应商（"供应商"），特此于下述签署栏所列的最晚日期签订以下交易协议（"交易协议"）。

## 序言

鉴于，在 2020 年___月___日（"破产申请日"），公司和其特定关联方（合称"债务人"）依据《美国破产法》第 11 章（具体见《美国法典》第 11 篇第 101 节至第 1532 节）（"破产法"）向美国纽约南区破产法院（"法院"）提交了自愿救济申请。

鉴于，在 2020 年___月___日，*法院作出[临时/最终]命令（I）授权债务人支付贸易索赔人的特定破产申请前索赔，（II）确认未完成订单的行政费用优先级，以及（III）授予相关救济*（"关键供应商命令"）[文案编号[●]]，授权债务人在特定条件下，[临时性或最终地]根据其中规定的条款和条件支付特定供应商（包括签署本交易协议的供应商）的破产申请前索赔。[1]

鉴于，在破产申请日前，供应商已经向公司交付货物和/或已经为公司提供服务，且公司已经根据惯用贸易条款向供应商支付了该等货物和/或服务的费用。

鉴于，公司和供应商（单称"一方"，合称"双方"）同意以下条款作为支付供应商可能对公司提出的特定破产申请前索赔的条件。

## 协议

1.    序言 前述序言经引用并入本交易协议，如同在本交易协议中详细阐述。

2.    供应商款项 供应商陈述并同意，经审慎调查，公司在破产申请日前与供应商签订的所有采购订单和合同（"采购订单"）项下，公司目前到期应付给供应商的所有款项总额为[___]美元（"约定的供应商破产申请前索赔"）。在本交易协议签署后，公司应在一年期间内以等额的双周分期付款方式就约定的供应商破产申请前索赔向供应商进行全额清偿，即就约定的供应商破产申请前索赔向供应商支付[___]美元（"供应商款项"）（不计利息、罚金或其他费用）。前述付款的一年期间应自本交易协议签订或法院作出授权公司签订本交易协议的命令（以孰晚者为准）后的下一个月的第一个工作日开始计算。此外，就供应商于破产申请日后交付的货物所对应的账单（"破产申请后的行政索赔"），公司应于供应商与公司于___年___月___日签订的谅解备忘录（"谅解备忘录"）

---

[1] 本交易协议使用的但未定义的术语应适用关键供应商命令中规定的含义。

所约定的账单到期应付日起 10 天内完成支付。公司同意其尽最大努力获取采购订单的融资，如果公司获得该等融资且该融资获得法院的批准，在供应商同意按相当于破产申请后行政索赔的任何账单面额的 5%给予提前付款折扣（"<u>提前付款折扣</u>"）的前提下，公司应于该账单日起的 20 天内完成支付。提前付款折扣应为供应商与公司另行约定的任何回扣或分摊之外的额外折扣。

3.　　　<u>供应协议</u>

a.　　　在债务人的破产法第 11 章（即重组破产）案件发生期间，基于谅解备忘录所约定的条款，供应商应（在公司通过采购订单或任何其他方式寻求该等货物和/或服务的范围内）为公司提供货物和/或服务，并且公司应接受供应商的货物和/或服务并向其付款。"债务人的破产法第 11 章案件发生期间"是指直到最早发生以下情况的期间：（i）公司的破产法第 11 章案件中，第 11 章重组计划的生效日期；（ii）根据《破产法》第 363 条完成公司全部或重要资产出售，致使公司的业务中断；（iii）公司清算或债务人的破产法第 11 章案件改为根据破产法第 7 章（即清算破产）处理的案件；或（iv）任何公司破产保护融资安排项下的违约，导致公司无法获得任何该等融资项下的可用资金。

b.　　　除非经双方书面同意，否则不得以不利于公司的方式修改、调整或删减谅解备忘录。

c.　　　供应商应继续履行不受破产申请影响的所有供应商回扣和分摊，而公司有权在正常业务过程中继续于未来的订单享受所有该等供应商回扣和分摊。

d.　　　供应商应继续正常装运货物，并应依据惯用贸易条款在正常业务过程中按公司的要求填写货物订单。

e.　　　供应商同意其不得取消任何订单。如果供应商违反本交易协议的规定取消订单，公司应终止支付约定的供应商破产申请前索赔，且供应商有义务向公司偿还其收到的且超出其以一般无抵押债权人身份应收取的供货款项的部分，并且公司可以将已支付的约定的供应商破产申请前索赔的款项用来抵消其未来可能应付给供应商的金额。

f.　　　不论供应商收到公司支付货款的时间，供应商陈述并同意其不得不合理地扣留任何提单，并应在向公司或其代理交付货物时发放所有提单。

4.　　　<u>电子贸易条款</u>

双方同意，公司可以使用电子供应商门户数据（EVP）程序或基于互联网/网络的文件来代替传统的纸本文件进行商品的购买和销售。不论使用何种提供商或应用程序来获取数据，供应商对其提供的所有 EVP 信息负责。根据本交易协议进行的每笔交易（以及任何相关通信）也应受本交易协议项下的条款和条件以及公司不时制定的惯例和程序的约束。

5.　　其他事项

a.　　供应商同意在公司的第 11 章重组计划生效日后，其不会基于供应商因破产申请后商品或服务的交付而可能提出的任何未结行政索赔而要求一次性付款，但前提是该等索赔尚未到期。供应商同意根据届时有效的惯常贸易条款对计划予以确认后，公司将在正常业务过程中支付该等索赔。供应商款项将与经确认的重组计划中规定的其他未结行政索赔的付款同时进行。

b.　　除本交易协议的条款或经确认的公司第 11 章重组计划外，供应商不会因任何破产申请前索赔（包括但不限于任何索偿权或任何根据破产法第 503 (b) (9)节提出的任何权利主张）而单独要求公司付款。

c.　　就因破产申请前协议或交易项下所声称的公司欠付供应商的任何剩余破产申请前款项，供应商不得针对公司、其资产或任何其他人士、实体、其各自的任何资产或财产（不动产或动产）提出或以其他方式主张任何留置权，无论该等留置权主张基于任何法律或其他法律依据。此外，如果供应商在签订本交易协议前已采取措施以提交或主张该等留置权，供应商将立即采取所有必要行动消除该等留置权，并特此授权公司代表其采取任何该等行动。

6.　　违约

a.　　如果供应商未能履行其在本交易协议项下产生的，无争议的义务（"供应商违约"），供应商应在收到书面通知后尽快向公司支付立即可用资金。根据公司的选择，前述金额等于供应商款项或公司从届时欠供应商的破产申请后应收账款中无法收回的供应商款项的任何部分。

b.　　如果公司根据本交易协议第 5 (a)条或以其他方式收回供应商款项，应恢复约定的供应商破产申请前索赔，如同未支付供应商款项一般。

c.　　供应商同意并承认，如果发生供应商违约，将会造成不可挽回的损害，法律上的救济不足以补偿公司。因此，供应商同意，除公司享有的任何其他权利和救济之外，公司还有权获得一项或多项禁令，以防止违反本交易协议的规定，并可通过一项或多项要求损害赔偿的诉讼，以及一项或多项要求强制履行、禁令救济和/或其他衡平法救济的诉讼，强制执行公司在本交易协议项下的权利和义务。尽管存在本交易协议的任何其他规定，获得衡平法救济（包括强制履行或禁令救济）的权利应存续，且不受本交易协议任何其他规定的限制。供应商特此放弃对法律救济是否充分的任何抗辩，以及放弃就提起禁令救济、强制履行或其他衡平法救济的行动提供任何保证金或其他担保的要求。

3

7.    通知

如发送给供应商，则发送至本交易协议签署栏中指明的人士及地址。

如发送给公司，发送至：

Tanya Creations, LLC
360 Narragansett Park Drive
East Providence, RI 02916
Ph    401-400-6101
Attn: A. Howard Moser
ahmoser@tanyacreations.com

并抄送：

Jeffrey A. Wurst
Armstrong Teasdale LLP
919 Third Avenue, 37th Floor
New York, NY  10222
Email: jwurst@atllp.com

8.    陈述与确认  双方同意、确认并陈述如下：

a.    双方已审阅关键供应商命令和本交易协议的条款和规定，并同意受该等条款的约束，本交易协议明确受限于关键供应商命令批准的程序；

b.    因约定的供应商破产申请前索赔而支付的任何款项应受限于关键供应商命令的条款和条件；

c.    如果供应商拒绝按本交易协议的规定向公司供应商品或提供服务，或以其他方式未履行其在本交易协议项下的任何义务，公司可行使关键供应商命令、破产法或适用法律项下的所有权利和救济；及

d.    如果双方就是否发生违约存在分歧，任何一方均可向法院申请确定其相对权利，在该等情况下，任何一方均不得采取任何行动，包括但不限于中止从供应商向公司发货，直至获得法院的裁决。

9.    保密  除供应商与公司之间的任何其他保密义务外，供应商同意对任何一方保密，不向任何一方披露：(a) 本交易协议；(b) 公司根据本交易协议支付的任何及所有款项；(c) 本交易协议规定的支付条款;及 (d) 惯常贸易条款（合称"保密信息"）。然而，如果任何一方试图通过司法行动或其他方式迫使供应商披露任何或所有保密信息，或者供应商拟披露任何或所有保密信息，供应商应立即向公司发送书面通知，以便公司可寻求禁令、保护令或任何其他可获得的救济，以防止该等披露。但如果未获得该等救济，供应商应仅提供法律要求提供的信息。

4

10.    **商业秘密**  供应商同意并确认，在向公司生产、供应及交付产品的过程中，供应商有权接触及使用公司的设计、图案、及其他与公司经营方式有关的信息及其他专有信息（"**商业秘密**"）。作为公司与供应商签订本交易协议的诱因之一，供应商同意以不低于其对待自身商业秘密的同等谨慎程度保护公司的商业秘密，并同意赔偿公司由于供应商未能保护公司的商业秘密而遭受的任何损失、支出、损害和费用，并使公司免受损害。该等商业机密包括但不限于落入任何公司竞争对手之手的任何商业秘密（包括产品设计）。

11.    <u>附则</u>

a.    双方特此陈述并保证：(i) 其拥有代表各相关方签署本交易协议的完全授权；(ii) 各相关方充分了解本交易协议，并已同意本交易协议；及 (iii) 其拥有使该方受本交易协议所有条款和条件约束的完全授权。

b.    本交易协议载明双方就本交易协议主题事项达成的完整谅解，并取代双方先前达成的所有口头或书面协议（包括所有采购订单）。若采购订单或公司与供应商签订的其他协议项下的任何规定与本交易协议的条款相抵触，则以本交易协议为准。除非经双方签署书面文件，否则不得对本交易协议进行变更、修改、修订或补充。此外，如果第 11 章重组计划规定了与本交易协议实质上一致的处理任何约定的供应商破产申请前索赔的方法，供应商同意根据任何相关披露声明和随附的请求材料中规定的适用程序及时就供应商目前或今后实益拥有的所有权利主张投票赞成任何第 11 章重组计划，而不采取任何直接或间接的行动来反对或阻碍对任何第 11 章重组计划的确认，并就此及时向债务人交还经正式签署的选票。

c.    未经公司事先书面同意，供应商不得全部或部分转让本交易协议或本交易协议项下的任何权利、权益或义务，无论是依法转让还是以其他方式转让。任何未经该等同意的、试图的转让均无效，且应使供应商在本交易协议项下的权利无效。如果供应商违反本交易协议的规定进行转让，公司应终止支付约定的供应商破产申请前索赔，且供应商有义务向公司偿还其收到的且超出其以一般无抵押债权人身份应收取的所有款项的部分，并且公司可以将已支付的约定的供应商破产申请前索赔的款项用来抵消其未来可能应付给供应商的金额。

d.    本交易协议应受纽约州法律管辖。位于纽约州纽约市的州法院及联邦法院对本交易协议项下的任何争议拥有专属管辖权。

e.    就所有目的而言，以传真或电子方式所作的签字应视为原始签字。

f.    本交易协议可签署多份文本，每份文本应视为一份原件，而所有文本应构成同一份协议。

g.    双方特此接受法院的专属管辖，以解决与本交易协议和采购订单相关的，或因本交易协议和采购订单产生的任何争议。

   h.  本交易协议应被视为由双方共同起草，任何不确定或省略的部分不应被解释为由一方单独起草本交易协议。

于下述载明的最晚日期同意并接受：

**TANYA CREATIONS, LLC**     **[供应商]**


签字：_____     签字：
首席运营官 A. Howard Moser     职务：

                       地址：

                        日期：

## Exhibit B

**The Proposed Orders**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| ) | |
| In re: ) | Chapter 11 |
| ) | |
| PREMIERE JEWELLERY, INC, et al.,[1] ) | Case No. 20-11484 |
| ) | |
| ) | (Joint Administration Requested) |
| Debtors. ) | |
| ) | |

**INTERIM ORDER (I) AUTHORIZING**
**THE DEBTORS TO PAYCERTAIN PREPETITION CLAIMS**
**OF TRADE CLAIMANTS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to pay in the ordinary course of business certain prepetition claims held by Trade Claimants; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and the relief requested therein in accordance with the Bankruptcy Rules and the Local Rules

---

[1] The Debtors in these cases are each incorporated or organized in the state of Rhode Island, and along with the last four digits of each Debtor's federal tax identification number are: Premiere Jewellery, Inc. [0250]; Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043]; ETYM Properties, LLC [4377]; and PJT, LLC [3105]. The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 1016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

[2] Capitalized terms used but not otherwise defined in this Interim Order shall have the meanings ascribed to such terms elsewhere in the Motion or in the First Day Declaration, as applicable.

of the Bankruptcy Court for the Southern District of New York (the "Local Rules") and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The form of Trade Agreement, substantially in the form attached to the Motion as Exhibit A, is approved in its entirety. The Debtors are authorized to enter into any such Trade Agreements on an interim basis.

3.      The Debtors are authorized, but not directed, to pay the prepetition Trade Claims in the manner set forth in the Trade Agreement in an aggregate amount not to exceed $2.0 million on an interim basis and as the Debtors deem necessary in their sole discretion. The Debtors are authorized to continue paying the Trade Claimants in the ordinary course. In the event the Debtors will exceed the aggregate amounts in any category as detailed in the Motion during the interim period, the Debtors shall file a notice with the Court describing the category and overage amount.

4.      As a condition to receiving payment on account of a Trade Claim, the Debtors, in their sole discretion, may require such parties to, by a written Trade Agreement: (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms

(including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the 12 months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms"), and (b) agree that they shall not be permitted to cancel any contract or agreement pursuant to which they provide services to the Debtors. The Debtors reserve the right to require additional favorable trade terms with any Trade Claimant as a condition to payment of any Trade Claim. Any party that accepts payment from the Debtors on account of a Trade Claim shall be deemed to have agreed to the terms and provisions of this Interim Order.

5.      Prior to entry of a Final Order, the Debtors shall not pay any obligations under this Interim Order unless they are due or deemed necessary to be paid in the Debtors' reasonable business judgment to ensure ongoing provision of goods or services or otherwise to avoid an adverse effect on operations.

6.      Notwithstanding paragraph 4 of this Interim Order, the Debtors may (a) in their reasonable business judgement, negotiate, amend, or modify the form of Trade Agreement and (b) decline to condition payment of Trade Claims upon the execution of a Trade Agreement.

7.      Regardless of whether a Trade Agreement has been executed, if any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms then, subject to the entry of a final order on the Motion from this Court: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper post-petition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding post-

petition balance due from the Debtors to such party, the Debtors may elect to re-characterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding post-petition balance and such supplier or vendor will he required to repay to the Debtors such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

8.      Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing contained in the Motion or this Interim Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

9.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

10.     The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any of the Trade Claimants.

11.     The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Order including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, and any statutory committee appointed in these chapter 11 cases every 30 days beginning upon entry of this Order.

12.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee and any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider, of the Debtors. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the

Debtors shall, to the extent reasonably practicable, provide three (3) business days' advance notice to, and opportunity to object by the U.S. Trustee and any statutory committee appointed in these chapter 11 cases; provided, that if any party objects to the payment, the Debtors shall not make such payment without further order of the Court.

13.     Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Order to a Trade Claimants or on account of an Outstanding Order, the Debtors shall provide such Trade Claimant with a copy of this Interim Order (unless previously provided to such Trade Claimant).

14.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the orders authorizing the use of cash collateral, and any cash collateral budget associated therewith.

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a).

16.     The requirements of Local Rule 9013-1(b) are satisfied.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

18.     To the extent that this Interim Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Interim Order shall govern.

19.     Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Interim Order, any authorization contained in this Interim Order, or any claim for which payment is authorized hereunder, shall be subject to any orders of this Court approving any debtor in possession financing for, or any use of cash collateral by, the Debtors,

and any documents providing for such debtor in possession financing and the budget governing such debtor in possession financing and use of cash collateral.

20.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

21.    No later than two (2) business days after the date of this order, the Debtors shall serve a copy of the Interim Order on the Notice Parties and shall file a certificate of service no later than 24 hours after service.

22.    The Final Hearing on the Motion shall be held on _____, 2020, at _____ (Prevailing Eastern Time), and any objections or responses to the Motion shall be filed and served so as to be received no later than _____ (Prevailing Eastern Time) on _____, 2020.

New York, New York
Dated: _____, 2020

_____
United States Bankruptcy Judge

**Order Prepared By:**

Jeffrey A. Wurst
Jack Dayon (*pro hac vice* motion pending)
Armstrong Teasdale LLP
919 Third Avenue, 37th Floor
New York, NY 10222
Telephone: (212) 409-4400
Email: jwurst@atllp.com
Email: jackdayon@atllp.com

Erin M. Edelman (*pro hac vice* motion pending)
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Email: eedelman@atllp.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) <br> ) <br> ) Chapter 11 <br> ) <br> ) Case No. 20- 11484 <br> ) <br> ) (Joint Administration Requested) <br> ) <br> ) |
| PREMIERE JEWELLERY, INC, et al.,[1] |  |
| Debtors. |  |

**FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO PAYCERTAIN PREPETITION CLAIMS
OF TRADE CLAIMANTS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order" or "Order") (a) authorizing the Debtors to pay in the ordinary course of business certain prepetition claims held by Trade Claimants; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and the relief requested therein in accordance with the

---

[1] The Debtors in these cases are each incorporated or organized in the state of Rhode Island, and along with the last four digits of each Debtor's federal tax identification number are: Premiere Jewellery, Inc. [0250]; Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043]; ETYM Properties, LLC [4377]; and PJT, LLC [3105]. The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 1016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

[2] Capitalized terms used but not otherwise defined in this Final Order shall have the meanings ascribed to such terms elsewhere in the Motion or in the First Day Declaration, as applicable.

Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York (the "Local Rules") and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein on a final basis.

2.      The relief provided in the Interim Order is approved on a final basis.

3.      The form of Trade Agreement, substantially in the form attached to the Motion as Exhibit A, is approved in its entirety. The Debtors are authorized to enter into any such Trade Agreements on a final basis.

4.      The Debtors are authorized, but not directed, to pay the prepetition Trade Claims in the manner set forth in the Trade Agreement in an aggregate amount not to exceed $2.0 million and as the Debtors deem necessary in their sole discretion. The Debtors are authorized to continue paying the Trade Claimants in the ordinary course. In the event the Debtors will exceed the aggregate amounts in any category as detailed in the Motion, the Debtors shall file a notice with the Court describing the category and overage amount.

5.      As a condition to receiving payment on account of a Trade Claim, the Debtors, in their sole discretion, may require such parties to, by a written Trade Agreement: (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms

(including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the 12 months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms"), and (b) agree that they shall not be permitted to cancel any contract or agreement pursuant to which they provide services to the Debtors. The Debtors reserve the right to require additional favorable trade terms with any Trade Claimant as a condition to payment of any Trade Claim. Any party that accepts payment from the Debtors on account of a Trade Claim shall be deemed to have agreed to the terms and provisions of this Final Order.

6.      Prior to entry of a Final Order, the Debtors shall not pay any obligations under this Final Order unless they are due or deemed necessary to be paid in the Debtors' reasonable business judgment to ensure ongoing provision of goods or services or otherwise to avoid an adverse effect on operations.

7.      Notwithstanding paragraph 5 of this Final Order, the Debtors may (a) in their reasonable business judgement, negotiate, amend, or modify the form of Trade Agreement and (b) decline to condition payment of Trade Claims upon the execution of a Trade Agreement.

8.      Regardless of whether a Trade Agreement has been executed, if any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms then, subject to the entry of a final order on the Motion from this Court: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper post-petition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding post-

3

petition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding post-petition balance and such supplier or vendor will he required to repay to the Debtors such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

9.      Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing contained in the Motion or this Final Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

4

10.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

11.     The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any of the Trade Claimants.

12.     The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Order including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, and any statutory committee appointed in these chapter 11 cases every 30 days beginning upon entry of this Order.

13.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee and the statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider, of the Debtors. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the

Debtors shall, to the extent reasonably practicable, provide three (3) business days' advance notice to, and opportunity to object by the U.S. Trustee and any statutory committee appointed in these chapter 11 cases; provided, that if any party objects to the payment, the Debtors shall not make such payment without further order of the Court.

14.     Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Order to a Trade Claimant or on account of an Outstanding Order, the Debtors shall provide such Trade Claimant with a copy of this Final Order (unless previously provided to such Trade Claimant).

15.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the orders authorizing the use of cash collateral, and any cash collateral budget associated therewith.

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a).

17.      The requirements of Local Rule 9013-1(b) are satisfied.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

19.     To the extent that this Final Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Final Order shall govern.

20.     Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Final Order, any authorization contained in this Final Order, or any claim for which payment is authorized hereunder, shall be subject to any orders of this Court approving any debtor in possession financing for, or any use of cash collateral by, the Debtors, and any

documents providing for such debtor in possession financing and the budget governing such debtor in possession financing and use of cash collateral.

21.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

22.     No later than two (2) business days after the date of this order, the Debtors shall serve a copy of the Final Order on the Notice Parties and shall file a certificate of service no later than 24 hours after service.


New York, New York
Dated: _____, 2020

_____
United States Bankruptcy Judge

**Order Prepared By:**

Jeffrey A. Wurst
Jack Dayon (*pro hac vice* motion pending)
Armstrong Teasdale LLP
919 Third Avenue, 37th Floor
New York, NY 10222
Telephone: (212) 409-4400
Email: jwurst@atllp.com
Email: jackdayon@atllp.com

Erin M. Edelman (*pro hac vice* motion pending)
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Email: eedelman@atllp.com