Jeffrey A. Wurst
Jack Dayon (*pro hac vice* motion pending)
**ARMSTRONG TEASDALE LLP**
919 Third Avenue, 37th Floor
New York, NY 10222
Tel:    (212) 409-4400
Email: jwurst@atllp.com
        jdayon@atllp.com

Erin M. Edelman (*pro hac vice*
motion pending)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Tel:    (314) 621-5070
Email: eedelman@atllp.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PREMIERE JEWELLERY, INC, et al.,[1] | Case No. 20-11484 (JLG) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of interim and final orders (the "Interim Order" and "Final

Order," respectively) (i) authorizing the Debtors to (a) pay prepetition wages, salaries, other

compensation and reimbursable expenses and (b) continue employee benefits programs and (ii)

granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

---

[1]  The Debtors in these cases are each incorporated or organized in the state of Rhode Island, and along with the last four digits of each Debtor's federal tax identification number are:  Premiere Jewellery, Inc. [0250]; Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043]; ETYM Properties, LLC [4377]; and PJT, LLC [3105].  The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 10016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## BACKGROUND

3.      Premiere Jewellery, Inc. and affiliated debtors in possession (collectively, the "Debtors" or the "Company") are a jewelry design, sales, and distribution enterprise, with headquarters located in East Providence, Rhode Island and offices also located in New York, NY and Qingdao and Yiwu, China. The Debtors design and distribute costume jewelry and hair goods and partner with major retailers, who then sell the Debtors' merchandise to consumers.

4.      On June 25, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Unites States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No committees have been appointed or designated.

5.      A comprehensive description of the Debtors' operations and events leading to the commencement of these chapter 11 cases is set forth in the *Declaration of A. Howard Moser Pursuant to Rule 1007-2 of Local Bankruptcy Rules for the Southern District of New York* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## EMPLOYEE COMPENSATION AND BENEFITS

6.      By this Motion, the Debtors seek to minimize the personal hardship its employees would suffer if employee obligations are not paid when due or as expected. The Debtors are

seeking authority to pay and honor certain prepetition claims relating to, among other things, wages, salaries, expense reimbursements, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, employees' share of insurance premiums, taxes, and 401(k) contributions), health insurance, and other benefits that the Debtors have historically directly or indirectly provided to the employees in the ordinary course of business and to continue providing such benefits and certain other benefits historically directly or indirectly provided in the ordinary course of business (all of the foregoing benefits, collectively, the "Employee Compensation and Benefits"). In addition, the Debtors are also seeking to pay all costs incident to the Employee Compensation and Benefits.

7.      Subject to the Court's approval of the relief requested herein, the Debtors intend to continue their prepetition Employee Compensation and Benefits programs in the ordinary course of business. Out of an abundance of caution, the Debtors request the right to modify, change, and discontinue any of their Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law.

## I.      Compensation and Withholding Obligations.

### A.      Unpaid Wages.

8.      The Debtors pay hourly and salaried employees' wages (the "Wages") and other compensation on a weekly basis (collectively, the "Employee Compensation"). Each month, the Debtors pay its employees approximately $231,494.60 in Wages in the aggregate.[2] The Debtors expect this pattern to continue post-petition. Because the majority of the employees are paid in arrears, certain employees will be owed accrued but unpaid Wages as of the Petition Date.

---

[2] Such amount may fluctuate as the Debtors have recently laid off and/or furloughed employees.

Wages also may be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that employees believe should have been paid, which, upon resolution, may reveal that additional amounts are owed to such employees.

9.      As of the Petition Date, the Debtors estimate that employees are owed an aggregate of approximately $44,000 on account of accrued wages, salaries, overtime, and other compensation earned before the Petition Date (the "Unpaid Wages"). The Debtors seek authority to pay their employees any Unpaid Wages in the ordinary course of business and consistent with past practice and to continue the Wages practices on a post-petition basis in the ordinary course of the Debtors' business.

**B.      Withholding Obligations.**

10.      The Debtors also are required by law to withhold from the employees' Compensation amounts related to, among other things, federal, state, and local income taxes as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, and local taxing authorities. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes generally are processed and forwarded to the appropriate federal, state, or local taxing authority at the same time employees' payroll checks are disbursed. The Debtors pay approximately $50,000 to $65,000 per month in the aggregate on account of the Payroll Taxes.

11.      As of the Petition Date, the Debtors do not believe that there are outstanding amounts owed on account of accrued but unpaid Payroll Taxes or other deductions (collectively,

the "Withholding Obligations"), but request authority from the Court to pay such amounts if the Debtors discover such amounts are owed. The Debtors seek authority to pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course of business during the administration of these chapter 11 cases.

### C.    Payroll Processing.

12.    The Debtors utilize ADP Processing, a third-party payroll service, to remit Wages and other payments to their employees, to pay the Withholding Obligations to appropriate third parties, and to process and administer the Debtors' payroll system. On average, the Debtors pay approximately $1,711.49 per month to ADP Processing for the payroll-related services that it provides to the Debtors and related administrative costs (the "Payroll Fees"). As of the Petition Date, the Debtors estimate that approximately $2,847.88 in accrued but unpaid amounts is outstanding on account of Payroll Fees, all of which will become due and owing within the first 30 days of these chapter 11 cases. Failure to pay post-petition Payroll Fees could lead to delayed disbursement of Wages to the employees or delayed payment of the Withholding Obligations to the appropriate third parties, to the detriment of the employees and the Debtors' operations. As a result, the Debtors seek authority to pay the Payroll Fees and continue administering payroll in the ordinary course of business consistent with historical practice.

### D.    Human Resources Services.

13.    The Debtors utilize HR Knowledge to administer the Debtors' human resources system. On average, the Debtors pay approximately $1,711.49 per month to HR Knowledge for payroll-related and human resource services that it provides to the Debtors and related administrative costs (the "Human Resources Fees"). As of the Petition Date, the Debtors believe

5

that there are no amounts outstanding on account of Human Resources Fees. Failure to pay post-petition Human Resources Fees could lead to delayed administration of the Debtors' human resources system, to the detriment of the employees and the Debtors' operations. As a result, the Debtors seek authority to pay the Human Resources Fees and continue administering the human resources system in the ordinary course of business consistent with historical practice.

### E.    Expense Reimbursements.

14.    The Debtors reimburse employees for certain expenses that such employees personally incur in the scope of their employment (the "Expense Reimbursements"). Expense Reimbursements typically include expenses associated with travel, lodging, meals, vehicle allowances and necessary insurance, club dues, cellular phones, and other business-related expenses related to the discharge of an employee's duties. Many Expense Reimbursements are incurred by employees through the use of personal funds, and the employee may be held personally liable for any unpaid obligations. Reimbursement of such expenses in the ordinary course of business is discretionary. The Debtors' inability to make such discretionary Expense Reimbursements in the ordinary course of business and consistent with historical practice could impose severe and undue hardship on individual employees where such employees made expenditures through the use of personal funds, and the resulting incurred obligations inured to the benefit of the Debtors.

15.    As of the Petition Date, the Debtors do not believe that any Expense Reimbursements remain outstanding. To the extent such prepetition amounts remain outstanding, the Debtors seek authority to honor such outstanding prepetition obligations in the ordinary course of business and consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a post-petition basis.

**F.      Corporate Credit Cards.**

16.      The Debtors also pay for corporate credit cards to be used for certain business expenses (the "Corporate Cards"), which cards are provided by the American Express Company ("Amex"). The Debtors have historically paid an average of between $100,000 to $150,000 per month to Amex on account of amounts due in connection with the Corporate Cards. As of the Petition Date, the Debtors estimate that approximately $223,564.25 is outstanding on the Corporate Cards, all of which will become due and owing within the first 30 days of these chapter 11 cases. The Debtors seek authority to pay any amounts outstanding in connection with the Corporate Cards and to continue paying amounts owed to Amex in connection with the Corporate Cards in the ordinary course of the Debtors' business.

**III.    Employee Benefit Programs.**

**A.      Health and Welfare Programs.**

17.      The Debtors offer several insurance policies to eligible employees for medical, dental, and vision care coverage and certain other benefits including health insurance, life insurance, disability benefits (collectively, the "Health and Welfare Programs").

18.      The Debtors seek authority to pay any unpaid amounts due under the Health and Welfare Programs and to continue the Health and Welfare Programs post-petition in the ordinary course.

19.      The Debtors offer their employees the opportunity to participate in a number of health benefit plans, including the Medical Plan and the Dental Plan (each as defined below and, collectively, the "Health Insurance Programs"). Historically, the Debtors have paid approximately $35,000 per month related to claims under the Health Insurance Programs.

20.     The Debtors offer a medical program (the "Medical Plan") to employees through Tufts Health Plan ("Tufts"). The Debtors estimate that, as of the Petition Date, they owe $44,659.92 to Tufts. Furthermore, the Debtors offer a dental program (the "Dental Plan") to employees through Delta Dental ("Delta"). The Debtors estimate that, as of the Petition Date, they owe $2,736.84 to Delta.

21.     The Debtors seek authority to pay, in a manner consistent with historical practice, any accrued but unpaid amounts on account of the Health Insurance Programs and to continue administering and paying for Health Insurance Programs in the ordinary course of business and consistent with historical practice.

### B.     Employee Benefits Programs

#### 1.     401(k) Plans

22.     The Debtors provide eligible employees with the ability to participate in a 401(k) defined contribution plan (the "401(k) Plans"). Employees become eligible to participate in the 401(k) Plan, as a contributor, upon the date of hire subject to certain minimum age requirements. The 401(k) Plan generally provides for deductions of compensation up to limits set by the Internal Revenue Coe and consistent with certain plan limit pre- and post-tax contribution deduction percentages. Each employee's contributions under the 401(k) Plan are deducted automatically from each paycheck and thereafter transferred by the Debtor to a trust established under the 401(k) Plan (collectively, the "401(k) Deductions").

23.     The 401(k) Plans are currently administered by PAW Holdings Inc., and Fidelity is the Trustee of the 401(k) Plans.

24.     Many employees' retirement savings solely consists of their 401(k) Plan. As such, the Debtors believe that continuing the 401(k) Plans are essential to maintaining employee

8

morale and protecting employees expectations. In addition, the Debtors believe that the 401(k) Deductions are generally held in a trust by the Debtors and are not property of their estates. Therefore, the Debtors request the authority to (a) pay all outstanding prepetition amounts incurred on account of the 401(k) Plans, (b) remit any unpaid prepetition 401(k) Deductions, and (c) to continue honoring their obligations related to the 401(k) Plans, to the extent such obligations arise, on a post-petition basis in the ordinary course of business and consistent with their prepetition practices.

### 2.    Basic Life and AD&D Insurance

25.    The Debtors offer life and accidental death and dismemberment insurance coverage (collectively, the "Basic Life and AD&D Insurance") through Mutual of Omaha to eligible employees, which provides benefits up to one times such employees' covered pay. The maximum coverage for salaried employees is $200,000 and $50,000 for hourly employees. The Debtors pay approximately $1,031.70 per month with respect to their portion of premiums for Basic Life and AD&D Insurance.

26.    As of the Petition Date, the Debtors believe that there are no amounts outstanding on account of accrued and unpaid premiums for the Basic Life and AD&D Insurance. By this Motion, the Debtors seek authority to pay in a manner consistent with historical practice any unpaid amounts on account of the Basic Life and AD&D Insurance, and to continue honoring their obligations under the Basic Life and AD&D Insurance on a post-petition basis in the ordinary course of business and consistent with their prepetition practices.

### 3.    Supplemental Insurance Program

27.    The Debtors offer supplemental insurance (collectively, the "Supplemental Insurance Program") through AFLAC to certain eligible employees, which includes: accident

insurance, cancer insurance, hospital protection, life insurance, and short-term disability, amongst others.

28.    Historically, the Debtors have paid approximately $474.15 per month on account of the Supplemental Insurance Program. As of the Petition Date, the Debtors believe that there are no amounts outstanding on account of accrued and unpaid premiums related to the Supplemental Health Insurance Program.

29.    The Debtors seek authority to pay, in a manner consistent with historical practice, any accrued but unpaid amounts on account of the Supplemental Insurance Program and to continue administering and paying for the Supplemental Insurance Program in the ordinary course of business and consistent with historical practice.

## RELIEF REQUESTED

30.    The Debtors seen entry of interim and final orders (the "Interim Order," and "Final Order," respectively, attached hereto as **Exhibit A**: (a) authorizing, but not directing, the Debtors (i) to pay prepetition wages, salaries, other compensation, and reimbursable expenses pursuant to the Proposed Interim Order and (ii) to continue employee benefit programs in the ordinary course of business, including payment of certain prepetition obligations related thereto; and (b) granting related relief. In addition, the Debtors request that the Court (as defined herein) schedule a final hearing within approximately 30 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## BASIS FOR RELIEF

**I.    Sufficient Cause Exists to Authorize the Debtors To Honor the Employee Compensation and Benefit Obligations.**

**A.    Certain of the Employee Compensation and Benefits Are Entitled to Priority Treatment.**

31.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Employee Compensation and Benefits to priority treatment. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan). The Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.

**B.      Payment of Certain Employee Compensation and Benefits Is Required by Law.**

32.     The Debtors seek authority to pay the Withholding Obligations to the appropriate third-party payees. These amounts principally represent employee earnings that governments, employees, and judicial authorities have designated for deduction from Employees' Wages. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from employees' Wages on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require the Debtors to withhold certain tax payments from employees' Wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) (holding that "[b]ecause the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate'") (citation omitted); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally

liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

## II.     Payment of the Employee Compensation and Benefits Is Warranted Under Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

33.     Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (citing favorably to the entry of "first day orders" authorizing the payment of prepetition wages where doing so would, among other things, "enable a successful reorganization); *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 105(a), 363(b), 507, 1107(a), and 1108 of the Bankruptcy Code.

34.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *See id.* at 497. Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

35.     Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under sections 105(a) and 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("Section 105(a) of the Code provides a statutory basis for the payment of pre-petition claims."); *Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code and noting that relief is appropriate where payment is needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale"). Specifically, the business judgment standard requires that a debtor "articulate some business justification, other than mere appeasement of major creditors." *Ionosphere Clubs*, 98 B.R. at 175.

36.     In addition, this Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit preplan payments of prepetition obligations when essential to the continued operation of the debtor's business. Specifically, this Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991) (stating that the doctrine of necessity "stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization"); *see also In re NVR L.P.,* 147 B.R. 126, 127-28 (Bankr. E.D. Va. 1992).

13

37.    This flexible approach is particularly critical where prepetition creditors, here employees and related third parties, provide vital goods or services to a debtor which would be unavailable if the debtor did not satisfy its prepetition obligations. For example, in *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under §105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" *Id.* (citation omitted). The court explained that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932.

38.    The Debtors submit that the relief requested represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003. Paying prepetition wages, employee benefits, and similar items will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption. Accordingly, the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefits, and related obligations, including the prepetition Employee Compensation and Benefits.

39.    In addition, the majority of employees rely exclusively on the employee Compensation and Benefits to satisfy their daily living expenses. Consequently, employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor their obligations related thereto. Furthermore, if this Court does not authorize the Debtors to honor their various obligations under the insurance programs described herein, employees will not

14

receive health coverage and, thus, may be obligated to pay certain health care claims that the Debtors have not satisfied. Additionally, as set forth above, employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at this critical juncture.

40.    The importance of a debtor's employees to its operations has been repeatedly recognized by courts in this circuit and other jurisdictions, and such courts have granted relief similar to the relief requested herein. *See, e.g.*, *Hollander Sleep Prods.*, 19-11608 (MEW) (July 2, 2019) [Docket No. 166] (authorizing debtors to pay prepetition wages, reimbursable expenses and benefits); *In re Windstream Holdings, Inc.,* 19-22312 (RDD) (Apr. 22, 2019), [Docket No. 378] (same); *In re Purdue Pharma L.P.*, 19-23649 (RDD) (Oct. 16, 2019) [Docket No. 309] (same). Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay any prepetition amounts accrued and unpaid on account of the Employee Compensation and Benefits and to continue the Employee Compensation and Benefits on a post-petition basis in the ordinary course of business and consistent with past practices.

### PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

41.    The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefits, as applicable. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the

Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

<u>**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**</u>

42.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to pay the Employee Compensation and Benefits and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and to maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

<u>**RESERVATION OF RIGHTS**</u>

43.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Proposed Interim Order and Proposed Final Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or

16

limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

44.     To implement the foregoing successfully, the Debtors request that the Court enter an Interim Order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

45.     The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to Webster Bank, N.A. (Attn: Daniel E. Burgoyne, Esq.); (d) counsel to any statutory committee appointed in the chapter 11 cases; (e) the United States Attorney's Office for the Southern District of New York; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### NO PRIOR REQUEST

46.     No prior motion for the relief requested herein has been made to this or any other court.

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim

Order and Proposed Final Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting

the relief requested herein and such other relief as the Court may deem just and proper.

Dated: June 30, 2020
New York, New York

/s/ *Jeffrey A. Wurst*

Jeffrey A. Wurst
Jack Dayon (*pro hac vice* motion pending)
**ARMSTRONG TEASDALE LLP**
919 Third Avenue, 37th Floor
New York, NY 10222
Tel:    (212) 409-4400
Email: jwurst@atllp.com
        jdayon@atllp.com

-and-

Erin M. Edelman (*pro hac vice* motion pending)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Tel:    (314) 621-5070
Email: eedelman@atllp.com

## **<u>EXHIBIT A</u>**

**Proposed Orders**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| ) | |
| In re: ) | Chapter 11 |
| ) | |
| PREMIERE JEWELLERY, INC, et al.,[1] ) | Case No. 20-11484-(JLG) |
| ) | |
| ) | (Joint Administration Requested) |
| Debtors. ) | |
| ) | |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing, but not directing, the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (ii) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in

---

[1] The Debtors in these cases are each incorporated or organized in the state of Rhode Island, and along with the last four digits of each Debtor's federal tax identification number are: Premiere Jewellery, Inc. [0250]; Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043]; ETYM Properties, LLC [4377]; and PJT, LLC [3105]. The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 1016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to such terms elsewhere in this Motion or in the First Day Declaration, as applicable.

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors provided appropriate

notice of the Motion has been provided in accordance with the Bankruptcy Rules and the Local

Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local

Rules") and the opportunity for a hearing under the circumstances; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, to continue and modify the

Employee Compensation and Benefits and to pay and honor prepetition amounts related thereto

in each case in the ordinary course of business and consistent with their prepetition practices.

3.      Nothing in this Interim Order should be construed as approving any transfer

pursuant to section 503(c) of the Bankruptcy Code.

4.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments

not otherwise due prior to the date of the Final Hearing.

5.      Notwithstanding the relief granted herein and any actions taken hereunder,

nothing contained in the Motion or this Interim Order or any payment made pursuant to this

Interim Order shall constitute, nor is it intended to constitute, an admission as to the validity or

priority of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

6.      Nothing in the Motion or this Interim Order shall impair the Debtors' or any other party-in-interest's ability to contest the validity or amount of any payment made pursuant to this Interim Order.

7.      Notwithstanding the relief granted herein or any action taken hereunder, nothing contained in this Interim Order shall create any rights in favor of, or enhance the status of any claim held by any Employee.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized, but not directed, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

9.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits.

10.     Notwithstanding the relief granted in this Interim Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the orders approving entry into debtor-in-possession financing and authorizing use of cash collateral.

11.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003.

12.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

13.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

16.     The final hearing with respect to the relief requested in the Motion shall be held on _____, 2020 at _____ (prevailing Eastern Time) (the "Final Hearing"). Any objections or responses to entry of the proposed Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2020 and served on the following parties: (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to Webster Bank, N.A. (Attn: Daniel E. Burgoyne, Esq.); (d) counsel to any statutory committee appointed in the chapter 11 cases; (e) the United States Attorney's Office for the Southern District of New York; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

17.     This Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the Motion or the implementation of this Interim Order.

18.     No later than 2 days after the date of this Interim Order, the Claims and Noticing Agent is directed to serve a copy of the Interim Order on all parties listed below and is directed to file a certificate of service no later than 24 hours after service.

New York, New York
Dated: _____, 2020

_____
The Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

**Order Prepared By:**

Jeffrey A. Wurst
Jack Dayon (*pro hac vice* motion pending)
Armstrong Teasdale LLP
919 Third Avenue, 37th Floor
New York, NY 10222
Telephone: (212) 409-4400
Email: jwurst@atllp.com
Email: jackdayon@atllp.com

Erin M. Edelman (*pro hac vice* motion pending)
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Email: eedelman@atllp.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| ) | |
| In re: ) | Chapter 11 |
| ) | |
| PREMIERE JEWELLERY, INC, et al.,[1] ) | Case No. 20-11484-(JLG) |
| ) | |
| ) | (Joint Administration Requested) |
| Debtors. ) | |
| ) | |

## FINAL ORDER (I) AUTHORIZING THE
## DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
## COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
## EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of a final order (this "Final Order"),

(a) authorizing, but not directing, the Debtors to (i) pay prepetition wages, salaries, other

compensation, and reimbursable expenses, and (ii) continue employee benefits programs in the

ordinary course of business, including payment of certain prepetition obligations related thereto,

and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and that this Court may enter a final order consistent with Article III of the United

States Constitution; and this Court having found that venue of this proceeding and the Motion in

---

[1] The Debtors in these cases are each incorporated or organized in the state of Rhode Island, and along with the last four digits of each Debtor's federal tax identification number are: Premiere Jewellery, Inc. [0250]; Tanya Creations, LLC [1867]; PAW Holdings, Inc. [9043]; ETYM Properties, LLC [4377]; and PJT, LLC [3105]. The address of the corporate offices of Premiere Jewellery, Inc. is 389 Fifth Avenue, New York, NY 1016 and the other Debtors' corporate headquarters is 360 Narragansett Park Drive, East Providence, RI 02916.

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to such terms elsewhere in this Motion or in the First Day Declaration, as applicable.

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors provided appropriate

notice of the Motion has been provided in accordance with the Bankruptcy Rules and the Local

Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local

Rules") and the opportunity for a hearing under the circumstances; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor;

       **IT IS HEREBY ORDERED THAT:**

       1.      The Motion is GRANTED as set forth herein.

       2.      The Debtors are authorized, but not directed, to continue and modify the

Employee Compensation and Benefits and to pay and honor prepetition amounts related thereto

in each case in the ordinary course of business and consistent with their prepetition practices.

       3.      Nothing in this Final Order should be construed as approving any transfer

pursuant to section 503(c) of the Bankruptcy Code.

       4.      Nothing in this Final Order authorizes the Debtors to accelerate any payments not

otherwise due prior to the date of the Final Hearing.

       5.      Notwithstanding the relief granted herein and any actions taken hereunder,

nothing contained in the Motion or this Final Order or any payment made pursuant to this Final

Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority

of any claim or lien against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

6.      Nothing in the Motion or this Final Order shall impair the Debtors' or any other party-in-interest's ability to contest the validity or amount of any payment made pursuant to this Final Order.

7.      Notwithstanding the relief granted herein or any action taken hereunder, nothing contained in this Final Order shall create any rights in favor of, or enhance the status of any claim held by any Employee.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized, but not directed, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

9.      The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits.

10.     Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the orders approving entry into debtor-in-possession financing and authorizing use of cash collateral.

11.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003.

12.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

13.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

14.     This Final Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

15.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

16.     This Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the Motion or the implementation of this Final Order.

New York, New York
Dated: _____, 2020

_____
The Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

**Order Prepared By:**

Jeffrey A. Wurst
Jack Dayon (*pro hac vice* motion pending)
Armstrong Teasdale LLP
919 Third Avenue, 37th Floor
New York, NY 10222
Telephone: (212) 409-4400
Email: jwurst@atllp.com
Email: jackdayon@atllp.com

Erin M. Edelman (*pro hac vice* motion pending)
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Email: eedelman@atllp.com